No. 30.—JAMES THOMPSON and wife, plaintiffs in error, *vs.* DANIEL SANDFORD, administrator, &c. defendant in error.

[1.] The rule of the Common Law, *seisina facit stipetem*, *held* not to be in force in Georgia, and that any estate, real or personal, held by any title, legal or equitable, without *actual seizin*, will descend to the heirs of the owners.

In Equity, in Monroe Superior Court. Decision on demurrer, by Judge STARKE. August Term, 1852.

James Thompson and Martha J. Thompson, formerly Martha J. Hunter, intermarried. John T. Dunn died intestate, without issue, and leaving neither brother, sister, or wife surviving him, and at the time of his death possessed of a large estate. Martha J. Thompson and her half-brother by the maternal side, David S. Walker, were the children of the only sister of Dunn. John H. Thomas administered on the estate of Dunn, and within less than twelve months, Walker died without issue, and without having been married, and without having reduced into possession any of the estate of Dunn. Daniel Sandford administered on the estate of Walker, and filed a bill against Thomas for his distrobutive share of Dunn's estate. At the September Term, 1850, of Monroe Superior Court, he obtained a decree against Thomas for $3,095. 00.

Thompson and his wife filed their bill in Monroe Superior Court, alleging the foregoing facts, and others not necessary to be set forth, against Daniel Sandford, as the administrator of Walker.

The bill prayed that Sandford might be decreed to pay over to complainants the full amount of the judgment and decree obtained by him against Thomas, together with whatever amount he may hereafter receive from Thomas, as the administrator of Dunn, claiming the same as the heirs at law of Dunn. To this bill a general demurrer was filed.

After argument had on the demurrer, the Court "ordered that the demurrer be sustained as to that part of the bill

which seeks to exclude the creditors of David S. Walker from any part of the estate, descended to him from John T. Dunn at his death, and that the bill be retained as to the part thereof to which the complainants are entitled, as heirs at law of David S. Walker, after the payment of the debts of Walker. And it was further ordered, that the defendant answer the part of the bill not overruled in sustaining the demurrer, it being the opinion of the Court that complainants take as heirs at law of David S. Walker, and not as heirs at law of John T. Dunn."

To which ruling and judgment of the Court on the demurrer, counsel for complainants excepted.

CHAPPELL and HARMAN, for plaintiffs in error.

PINCKARD and CABANESS, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The question in this cause is, whether the complainants in the bill inherit from Dunn, as heirs at law, or from Walker, as his heirs at law. It is contended by the plaintiffs in error, who are the complainants in the bill, that as Walker never was seized of the distributive share in his uncle's estate, it cannot descend from him to Mrs. Thompson, his sister, but that it must descend to her as the heir of their uncle, who was last seized. It would make no difference whether she inherited it from the one or the other, if Walker had not died in debt. If the property was vested in him, then his debts must be paid; if not, of course no part of it goes to his creditors. It is therefore, a contest between Thompson and his wife and the creditors of Walker, represented by Sandford, his administrator. The complainants plant themselves upon the ancient rule of the Common Law, *seisina facit stipetem*. *Seizin* creates the root of descent; without *seizin* there cannot be a *propositus*. The question is one of the utmost practical importance in this State. It is no doubt true that by the Common Law, no per-

son can be properly such an ancestor as that an inheritance of lands or tenements can be derived from him, unless he hath had actual seizin of such lands, either by his own entry, or by the possession of his own or his ancestor's lessee for years, or by receiving rent from a lessee of a freehold, or unless he hath had what is equivalent to corporal seizin in hereditaments that are incorporeal, such as the receipts of rent, the presentation to the church in case of an advowson, and the like. But he shall not be accounted an ancestor who hath had only a bare right or title to enter, or be otherwise seized.

This kind of seizin succeeded to the ancient feudal investiture, and was held necessary, as evidence that the ancestor had that property in himself, which is now to be transmitted to his heirs. 2 *Black. Com.* 208, 9.  *Co. Lit.* 15.  3 *Atk.* 469. *Ratcliff's case,* 3 *Coke.* 37.  *Flet. L.* 6, *c.* 2, §2.  We concede this to be the rule of the ancient Common Law, as to title by descent. It is not now the rule in Great Britain, for it was abolished there in 1833, by *Statute,* (3 *and* 4  *W. IV. c.* 106.) It would be strange indeed, if a rule which had outlived the policy in which it originated, and which for that reason has been abolished in England, should be obligatory in this country. The rule, from the beginning and up to this moment, could have no application here, because wholly unsuited to the condition of things in this State. The reason of the rule also has ceased, and therefore it has ceased. If the reason for it is found in the necessity of evidence to the vicinage, of the ownership of lands, the reason ceases, because our Registry Acts furnish more abundant evidence of ownership than seizin could possibly do. A large amount of lands throughout this Union lie where there is none, or but little population, and as to which there is no vicinage. We have adopted the Common Law, except such parts of it as are contrary to the Constitution, Laws, and Government of the State, and I will add, impossible or absurd in its application. The rule in England applied to real estate alone. Our Statute has placed real and personal property upon the same footing, as to distribution, and has thereby repealed the Common Law rule as

Thompson and wife *vs.* Sandford.

to the realty. Stronger ground than either of these is found in our Act of distribution. Descent of property in this State is regulated by Statute. The Act of 1804, amendatory of the Act of 1789, declares that "when any person holding real or personal estate, shall depart this life intestate, the said estate, real or personal, shall be considered as altogether of the same nature, and upon the same footing, so that, &c." It then proceeds to disignate who shall be heirs. This Act defines who shall be the *propositus*, the fountain of inheritable blood. Any person holding real or personal estate, is made the *propositus*. Any one departing this life, and at death holding real or personal estate, is the root of descent, by the will of the Legislature, his or her estate is declared subject to distribution, and the lines of descent are clearly marked. The same words are found in the Act of 1789, and the earlier Act of 1785. There can be no question but that the Legislature intended in these Acts to repeal all repugnant rules of the Common Law, as to the *propositus*, and to declare who in Georgia should be capable of transmitting estates, and what kind of tenure should render them inheritable. As to the person, any and all who might die holding estates, are made capable of transmitting them. As to the estate itself, it is only necessary that it be holden. I have no doubt the phraseology of the Act was adopted with a special object, and that object was to repeal the rule of the Common Law, *seisina facit stipetem*. With the clear and profound knowledge and wisdom which characterized the legislators of that day, unsurpassed by any of the latter times, the Legislatures of 1785, 1789, and 1806, adopted a form of expression so comprehensive as to include any and every title to property, whether legal or equitable, whether perfected by seizin in Law, or in deed, or by both. *Holding* embraces any tenure involving title. Ownership, in Law or Equity, is the sole test of descent. Legal seizin is a tenure, or holding, and we have no authority to exclude from the meaning of the word that tenure, and limit it to a tenure by actual seizin. This construction is too obvious to require farther elucidation. It is sustained by the

uniform usage of the Courts of Georgia, for it is hardly within the knowledge of any lawyer that seizin in fact has been held indispensable to the descent of property. *Cobb's New Digest,* 291. *Watkins' Digest,* 313, 414. It is fortified too, by the construction which in other States has been given to their Acts of distribution. The Virginia Act of 1785, which without more, has immortalized Mr. Jefferson, chiefly because of its abolition of the doctrine of primogeniture, and which ought also to immortalize his coadjutors, Messrs. *Pendleton* and *Wythe,* his equals in patriotism and his superiors as lawyers, provides that "henceforth when any person having title to any real estate of inheritance, shall die intestate as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course, that is to say, &c." By some, it was held, that title meant a complete title, which consists of right and seizin united, of *juris et seisinae conjunctio.* But the Virginia Courts and sages have construed title in that Act to mean, such title as the decedent had, whether complete or incomplete, legal or equitable, and having any such title, that he was a *propositus.* Now, holding, in our Act, is a more general and comprehensive word than title in theirs, and a *fortiori,* entitled to the same comprehensive interpretation. 1 *Tucker's Com. book,* 2, *p.* 187, 188, 189. So in Connecticut, *seisina facit stipetem* has been repudiated by similar general terms. 3 *Day,* 166. *Swift's Digest, revised, vol.* 1. *p.* 114.

I might refer to the Acts of other States for confirmation, but deem it useless.

Instead, then, of the maxim of *Fleta, seisina facit stipetem,* we adopt a better, to wit, *titulus facit stipetem.*

Let the judgment be affirmed.