No. 15.—HUGH A. HARALSON and others, plaintiffs in error, *vs.* JAMES K. REDD, ex'r, and others, defendants in error.

[1.] A devise of real and personal property, to be divided between a widow and her children, the children to have their shares apportioned to them as they respectively marry or arrive at age—the portion of the widow " she is to have her natural life, and give or will to any of my (testator's) children she may think proper": *Held*, that the widow took a life-estate only.

[2.] Upon the death of the widow, without disposing of the share allotted to her, it reverted to the estate of testator, to be equally distributed among his heirs at law, (his will not disposing of this reversionary interest.) And this result follows, although testator, in another item of his will, declared

that his children, by a former marriage, should not have any more of his estate.

In Equity in Troup Superior Court. Decision by Judge IR-WIN.

Nicholas Lewis died, leaving the following will:

I, Nicholas Lewis, of LaGrange, Troup county and State of Georgia, being of sound mind, do make this, my last will and testament, as follows:

Section 1st. I do hereby appoint my wife, Harriett W. Lewis, Howell Lewis, my son, and James K. Redd my executrix and executors.

Section 2nd. It is my will that those of my children that I have heretofore given portions to, shall have no part or portion in the estate that I may die possessed of, viz: William H. Lewis, Nicholas M. Lewis, John S. Lewis, Caroline M. Haralson, Lemuel J. Lewis, Mary E. Redd, Howell Lewis and Francis S. Early, in right of his deceased wife, Frances Sarah, my daughter, Cornelia Culberson and Helen M. Ferrell, except what shall be especially pointed, hereafter, out.

Section 3d. It is my will that all the property that I may die possessed of, both real and personal, shall be divided between Harriett W. Lewis, my wife, Robert Lewis, Oscar F. Lewis, Pauline Lewis, Warner Lewis and Charles Lewis, at the following time and in the following portions; that is, whenever any of my unportioned children, just mentioned, becomes of age or marries. As soon thereafter as the crop on hand may be gathered or finished, the one becoming of age or married, shall have her or his portion allotted to her or him, in the following manner: If a daughter, she shall have an equal portion of all the estate, lands or lots excepted, between my wife and the latter children, just mentioned; and the rest or residue of the property shall be continued on the plantation until the next becomes of age or marries, when the like division shall take place, in the same way and manner as the first, only with

this difference: should one of my sons become of age, then the personal property shall be divided in the same way as before pointed out; but the lands shall be equally divided between my wife and my younger sons, Robert, Oscar, Warner and Charles; and should any of my children die, viz: Robert, Oscar Fitzallen, Pauline, Warner and Charles, the property shall be divided among those children last named, equally, in the manner and on the same principles before pointed out; and the residue or balance of the property shall continue on the plantation, as though I was living, for the benefit of my wife and the children, equally, that have not had their portions allotted to them; but should my wife think proper to marry again, it is my will that she be dismissed from being executrix of my estate, and Robert be substituted in her place, as one of my executors, and that my house and lands be sold on reasonable time of payment or payments, for the benefit of herself and my younger boys, viz: Robert, Oscar Fitzallen, Warner and Charles; and the money accruing therefrom, put at interest for their benefit. The portion allotted to my wife she is to have her natural life, and give or will to any of my children that she may think proper.

Section 4th. I do solemnly request that my wife would keep my house open to any of my children that may be or have been indigent or unfortunate.

Section 5th. It is my will that my little children be raised in the principles of the Christian Religion, and in the fear and admonition of the Lord; and as soon as I am absent, in death, that my wife will personally set up family worship, and pray with and for my children.

Section 6th. It is furthermore my will, that my executrix and executors, may, with the profits arising from the estate, purchase property, if they may think it advantageous to the estate, for the benefit of my younger children, viz: Robert, Oscar F., Pauline, Warner and Charles. Should any purchase be made, prior to any division, then, for the benefit of all just named. If, after any division, those that may have drawn their portions, shall have no interest in the property thus acquired;

and also for the benefit of my wife, equally with the before-mentioned children.

Section 7th. It is my will, that my children may have their option, whether they will draw their part in the negroes, or let them work upon the plantation, and draw their proportion; and it is further my will, that my wife shall have the house and lot in LaGrange, furniture, &c., her natural life or widowhood. It is further my will, that my lands shall not be divided until the youngest becomes of age.

Signed, &c.

The widow, Harriet W. Lewis, died without disposing, in any way, of the property left her in the 3d clause of this will.

After her death, the executor, Redd, filed his bill for construction and direction, as to this share—the other legatees named in that clause, claiming it absolutely, on the one hand, and the children by the first marriage, claiming on the other hand, that it reverted to the estate; and that as to this reversionary interest, there was an intestacy.

Upon the hearing, the Court held, that the legatees named in the 3d item, took this share in remainder, absolutely; and this decision is assigned as error.

H. A. HARALSON and T. R. R. COBB, for plaintiffs.

B. H. HILL and R. J. MORGAN, for defendants.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] We are called on to construe the will of Nicholas Lewis, deceased, and to say, first, what estate his widow took.—Most clearly, a life estate only. The share given to her, is limited expressly to the term of her natural life, with the power of disposition, either by deed during her life, or by will after her death. She died without doing either. She took an estate for life only.

[2.] The next and main question is, what became of the fee

of that portion of the property allotted to Mrs. Lewis? Did it go to the younger children mentioned in the 3d item of the will? or did it revert to the estate of the testator, and become distributable, under the Statute, to his heirs generally?

It is insisted, that the latter proposition cannot be maintained, because the older set of children are expressly exempted, by the second clause of the will, from all further share or portion of their father's estate, except what shall be expressly given to them, in the subsequent part of the will. This may be true—still, if no disposition is made of this reversion by the testator, the laws will cast it upon his heirs, for the simple, and yet most satisfactory reason, that there is nobody else to take it. The inquiry, then, is narrowed down to this, does the will expressly, or by necessary implication, dispose of this reversion?

The younger children contend, that this is done by the 3d item in the will, which directs that all the property, real and personal, of the deceased, be equally divided between the widow and the five children therein named. That it is true, that a life-estate was carved out of one-fifth of the property, for the widow; but that upon her death, the whole belonged to the five children.

We do not think that this item of the will, is fairly susceptible of this interpretation. She took her share just as absolutely, as the children took theirs. Her portion was separated, in legal contemplation, just as much as theirs, and the only difference is, that the children took the fee in theirs, while the widow takes only an estate for life, with the power of disposition in hers. But is not the arrangement, of itself, utterly inconsistent with the idea, that she took the usufruct only, in her portion, while the *corpus* was vested in the children? The power of disposition negatives this conclusion. But, that the reversion in her part, was not included in this division directed to be made by the third item of the will, is demonstrable from this consideration alone, namely: that she participates equally with the children, in everything to be divided. And it would be a self-evident absurdity to hold, that

she could divide with the children an interest that could accrue only after her death; and that, too, upon the failure on her part, up to the last moment of her life, to make any disposition of it herself. In other words, the widow is made, by this course of reasoning, to divide with her children, the reversion in her share in her husband's property, after her life estate therein has terminated.

It is in vain to search this instrument for any disposition of this reversion. The testator neither intended to dispose of it, nor has he done it. He supposed, no doubt, that when he had sub-divided his property between his widow and these younger children, giving her a life estate in hers, with the power of disposition, that he had willed the whole of his estate. It never occurred to him, that his widow might die without making any disposition of her share; hence, he made no provision for such a contingency.

What then, is to be done? Why, to permit the law to come in and do that with his property, which the testator has omitted to do, viz: make disposition of it. Nor is any violence done to the testator's intention .

By authorizing his widow to give, during her life, or bequeath at her death, her share of the estate to any of his children, he evinced that he had no choice or preference as between the children. The law makes none, but treats them all alike.—Should not this fact reconcile all parties to this decision? The interpretation we put upon the will, best subserves the intention of the testator, so far as it can be gathered from the will. For, notwithstanding the terms of exclusion in the second item of the will, it is not pretended but that the widow had plenary power to dispose of the entire part left to her, to the older children. She is clothed with authority to give or will it to any of the testator's children, that she might think proper. And this contingent interest, and the request to his wife, in the fourth item of his will—to keep her house open for any of his children that are, or may become indigent—may be, and probably is, what is meant by the words in the latter clause

of the second item, that is, that the older children were to take nothing "more than which shall be expressly pointed out thereafter."

Why should it be thought a strange thing then, that these older children, as well as the younger, were in the mind of the testator, when he endowed his wife with legal capacity of dispensing her bounty to *any* of them? Or, that neglecting to do so, the law should distribute it to them all alike. Neither *the testator or his widow cared to select, and the law will not.*

We have been requested to state, for the instruction of the executor, whether the house and lot in LaGrange, given to the widow, in the seventh item of the will, is in *addition* to her equal portion of the real estate? If this clause stood alone, we should be inclined to think that it was. But, by examining other parts of the will, the third item especially, our opinion is, that such was not the purpose of the testator.

For instance, if the widow married, his directions were, that his lands, as well as his town lot, should be sold, and the proceeds equally divided between the widow and the four younger sons. Looking at the whole will then, and interpreting this latter item in the light of the rest, and especially of the third clause, we are satisfied that the intention of the testator was merely to indicate his wish, that during the life-time or widowhood of Mrs. Lewis, that she should occupy this place as a home for herself, as well as the younger and unfortunate children; and that it was to constitute a part of his real estate, and be equally divided between the widow and four younger sons, when the youngest should become of age. And it is apparent that the testator never conceived that Mrs. Lewis might die before this event happened.

The judgment of the Court below, therefore, must be reversed, as well for not charging the Jury as requested, as in giving the instructions which he did. It being the unanimous opinion of this Court, that Mrs. Lewis took a life estate only, in the property left to her, and that, at her death, reverted to, and became a part of the estate of Nicholas Lewis, subject to distribution amongst his heirs at law, generally.