No. 51.—GEORGE LYON, plaintiff in error, *vs.* EDWARD HOWARD and others, defendants in error.

[1.] An equitable claim against the legatees of an estate, cannot be pleaded in defence of an action by the administrator *de bonis non, cum testamento, &c.* for a debt due to the estate. But upon a bill filed by the creditor against the legatees and the administrator, setting forth that the legatees reside in various States—that to sue them separately would entail such an amount of expense, &c. as would amount to the whole of his claim ; that the debt was contracted with the estate upon the faith of this equitable claim ; and that these legatees are the only parties in interest, there being no debts of the estate, a Court of Chancery will decree payment to the creditor, out of the debt due the estate.

[2.] Such a bill should not be dismissed because the wives of some of the legatees, daughters of the testator, and who might be entitled to an equitable settlement out of the legacy, were not made parties to the bill ; and it was the duty of the Chancellor, in such case, to direct an amendment rather than turn the parties out of Court.

In Equity, in DeKalb Superior Court. Demurrer. Decided by Judge WARNER, August Adjourned Term, 1854.

This bill was filed by George Lyon against Edward Howard, administrator, with the will annexed, of Edward Howard, deceased, Joseph Wooten, Abraham Houseworth, Bennett Parish, John Parish, Sion Massey, Triplet Cannady, John Howard, Lemuel Dean, legatees under the will of the said Edward Howard, deceased, and Robert Jones, Deputy Sheriff of DeKalb County.

The bill alleges, that in the year 1818, Edward Howard of Greenville District, South Carolina, departed this life, leaving a will, by which he bequeathed to his wife, Mary Howard, during her widowhood, a negro woman named Jinney, and her increase; and after "that", to be equally divided among his twelve children; that Mary and John Howard were appointed executor and executrix by said will; that in 1823 Mary removed from South Carolina to the County of DeKalb, and there the said Jinney bore a large family of children, up to the year 1838, when they had increased to the number of 14; that at that time, the said Mary Howard having become very old and infirm, and blind, and unable to manage said negroes, and all the legatees of the said Edward Howard being of full age, (except a grand-child, who was represented by his guardian,) entered into an agreement, amongst themselves and the said Mary Howard, that the said negroes should be sold and divided among the legatees. The bill further states, that at this time, the said legatees were scattered over several States.

The bill further alleges, that the said Mary Howard executed, in 1838, a deed of relinquishment to the said negroes, in pursuance of said agreement, by which she gave up all of the said negroes, except a girl called Sally Ann and a man named Lindsey, which she reserved for her use during her life; that the legatees reduced the agreement aforesaid, among themselves, to writing, by which the negroes were to be sold as aforesaid, and that the money arising from the sale of Lindsey, to-wit: nine hundred dollars, should be set apart for the support of the said Mary Howard; that the said negroes were sold in March, 1838, thirteen in number, including Lindsey, by John Howard, as executor of Edward Howard, deceased, and who then lived in the State of Mississippi; that the money for which Lindsey sold was placed in the hands of Philip Houseworth, to be applied, by him, to the support of the said Mary Howard.

The bill further states, that in the year 1845, Mary Howard commenced to live with complainant, and continued so to do until September, 1847; that during that time, from her old

age and afflictions, being blind and almost helpless, she gave a great deal of trouble, and required much care and attention; that her mind became so much impaired, the Inferior Court of DeKalb County declared her to be a person of unsound mind, and appointed complainant her guardian; that the woman Sally Ann, in the mean time, gave birth to several children—and was thereby unable to wait upon and take care of the said Mary Howard, and rendered her services valueless to complainant.

The bill further states, that after complainant was appointed guardian for the said Mary Howard, Philip Houseworth paid over to him the sum of $575.00, it being part of the money arising from the sale of the negro Lindsey; that after the death of the said Mary Howard, complainant presented to the Court of Ordinary of said county, his account for the board and clothing, care and attention furnished and given to the said Mary Howard, and the said negro woman Sally Ann and her children; and the said Court allowed him the sum of $542, for his said services and expenditures. The bill further alleges, that at the time Mary Howard came to live with complainant, she had no other means of support than the funds arising from the sale of Lindsey, and that complainant was induced to take her, from the fact that said fund was set apart by the said agreement, for her support and maintenance during her life.

The bill further states, that Edward Howard, after the death of the said Mary Howard, took out letters of administration, with the will annexed, on the estate of Edward Howard, deceased, from the Court of Ordinary of DeKalb County, and commenced an action against complainant, for the recovery of the said $575; that complainant set up, as a defence to said suit, the said agreement between the legatees and the said Mary Howard, and the judgment of the Court of Ordinary allowing him the said $575, for maintaining and supporting the said Mary Howard; that upon the first trial of said cause the defence of complainant was allowed by the Court; that on the appeal the Court sustained a motion to strike the plea of the complainant, and a verdict and judgment was rendered against

him for the said $575; that a *fi. fa.* was issued from said judgment, and levied upon the property of complainant.

The bill further states, that the maintenance and support of the said Mary Howard and her negroes, by the complainant, was worth the said sum of Five Hundred and Forty-two Dollars; that the legatees under the will of the said Ed. Howard, reside in several States, to-wit: Georgia, Alabama, Mississippi, &c. and that if complainant be driven to sue each one separately, it will cost more than the amount of complainant's claim; and that there were neither debts or creditors of John Howard's estate.

The bill prays that defendants may come to an account with complainant, and that the said sum of $542 be set off against the said judgment rendered against complainant, or that a new trial may be had, and that defendant, Edward Howard, administrator, may be restrained from proceeding with the said *fi. fa.* To which is added a general prayer for relief.

To this bill a general demurrer was filed, which the Court sustained, and dismissed the bill. To which decision Counsel for complainant excepted.

EZZARD, for plaintiff in error.

CALHOUN, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] For the purposes of the demurrer, the allegations of this bill must be taken as true; and so receiving them, they present a very strong case for the interposition of a Court of Equity—one in which such a Court, only, can give adequate relief. They present a state of facts, of which the complainant could not have availed himself, in defence of the action instituted against him by the administrator; for his claim was not on the estate of John Howard, but was an equitable claim upon this fund, as against the legatees, by reason of their

agreement; and no defence which he could have made to that action would, therefore, have afforded him protection.  The Court below did right in rejecting it, in the Common Law action of the administrator against him.  He should not, consequently, be prejudiced in his claim against these legatees, now asserted in Equity, by reason of the administrator's judgment against him, if he can show reasons why they should be made to account with him concerning it; and he does exhibit such reasons, if he show that these legatees have agreed that this fund should go to the support of Mrs. Howard, that there are no other persons interested in this estate, and that his bill for the support of Mrs. Howard is correct.

It is not a good objection, that the complainant has a remedy at Common Law.  That remedy is not adequate, for the reasons assigned in the bill.  He can only have complete protection, if his case be that which he has set forth by the aid of a Court which can hold back the hands of this administrator, until the legatees can be brought into account with the complainant—a Court having authority to bring all these parties before it, and thus save multiplicity of suits, and accumulation of expenses and costs.

[2.] Neither is it a good reason why this bill should have been dismissed, that the daughters of John Howard, and wives of some of these defendants, were not made parties to the bill, as being entitled to an equitable settlement out of this fund. 1. The amount coming to each of these eleven legatees, out of five hundred and forty-two dollars, is so small as to make it questionable whether or not it would be expedient to give direction to it as a settlement upon wife and children.  2. If these *femes covert* should have been made parties, it might have been done by amendment.  It is, perhaps, advisable that they should be made parties; but this can and should be done by amendment; and the bill should not, on this account, be dismissed. There may have been no formal motion to amend, but the principles of substantial justice, and the practice in Courts of Chancery, authorize a Chancellor, under such circumstances, to di-

rect an amendment rather than turn the parties out of Court. (*Wade vs. Parker*, 2 *Keene*, 59. *Robert & Wife vs. West & Reid*, 15 *Ga.* 148.)