## OLIVER v. POWELL, and *vice versa.*

1. When a plaintiff suing for land as heir of an intestate is met by the defense that the property in dispute had been duly sold by the administrator of such intestate's estate, he may by an appropriate equitable amendment attack the alleged administrator's sale; and such an amendment does not add a new and distinct cause of action.

(a) The amendment allowed in the present case for the purpose indicated above was in some respects meritorious; and if open to objection for duplicity, was not demurred to on that ground.

(b) In so far as the demurrer to this amendment assumed the existence of a fact not therein alleged, it was " speaking " in character.

2. A mere request or direction embraced in a will that the executors thereof have the surname of illegitimate sons of the testator lawfully changed to that of himself, if he should fail to do so while in life, and that they be " considered [his] lawful heirs," does not make them devisees of an interest in realty

respecting which the will is silent; and this is so though the preamble of the same contains a recital that the testator " deems it right and proper . . that he should make a distribution of his property."

3. An heir at law claiming to inherit realty is bound by any valid contract with respect thereto made by his ancestor while in life, and concluded by a sale of realty belonging to the latter's estate lawfully made by the administrator thereof. Applying what is here laid down to the evidence in the present case, there were issues for determination by a jury, and not for judicial solution by the direction of a verdict.

4. Where realty is devised to one for life, and no further testamentary disposition thereof is made, the reversionary interest in fee remaining in the testator's estate vests immediately upon his death in those who are then his heirs at law, with the right of possession postponed until the death of the life-tenant, and does not remain in abeyance while he lives and at his death vest in those who would then be such heirs.

5. The defendant to an action for land brought by an heir at law of a deceased intestate is not incompetent to testify as a witness in his own behalf to transactions between himself and the decedent with respect to the premises in dispute.

6. The rule that full performance by one of the parties to a parol contract respecting an interest in land takes the same out of the statute of frauds was, under the testimony introduced by the defendant, applicable in the present case.

7. There was no error in admitting in evidence the administrator's deed relied on by the defendant.

8. As the plaintiff was not entitled to the direction of any verdict in her favor, there is no merit in her complaint that the court erred in not directing the jury to find for her a greater interest in the premises described in her petition than that covered by the verdict for her which they were actually instructed to return.

Argued November 25, 1901.— Decided February 5, 1902.

Complaint for land. Before Judge Sheffield. Randolph superior court. May 22, 1901.

*William D. Kiddoo* and *William C. Worrill*, for Oliver.
*Arthur Gray Powell*, contra.

LUMPKIN, P. J.   In 1857 and for years previously, James W. Oliver resided in Randolph county with his wife, Susan, and her sister, Frances Green.   The wife had no children, but the sister, as a result of illicit relations between herself and Oliver, bore him three sons, named respectively George W., James F. and William J.   The first was, by an act of the General Assembly passed in 1847, made the legitimate son of his father, and his name was changed to George W. Oliver.   James W. Oliver died testate in the year first mentioned.   His wife, her sister, and the three sons all survived him.   The following is an abstract of so much of the will of James W. Oliver as it is now material to consider:   To his wife

38

the testator devised "one-fifth part of all [his] estate, both real and personal, during her natural life or widowhood, with the right to control the household affairs." To Frances Green was devised "one-fifth part of his estate, both real and personal, during her natural life or singlehood, provided she [remained] in the family on the premises under the direction of his wife." One-fifth part of the testator's estate, both real and personal, was without condition given to his "son, George W. Oliver, son of Frances Green." To each of her other sons, James F. Green and William J. Green, of whom the testator in his will acknowledged himself to be the father, was likewise devised one-fifth part of his estate, both real and personal. Provision was made in the will that "the portions devised to each heir be kept together as common stock, and no one heir [should] be allowed to spend or use more than his, or her, proportionate part of the profits arising from said estate," which were to be charged with the expenses incident to the education of the testator's "three children above mentioned." In the event "his wife, Susan Oliver, should marry again," she would thereby forfeit "her fifth part of his estate," provided, nevertheless, that she might "then draw from his estate one horse," two negroes to be selected by her, and certain articles of furniture. A similar stipulation was made with regard to "his wife's sister, Frances Green," in the event she should marry. The testator also incorporated in his will the following express provisions: "As my three sons above mentioned become of age, they may, if they shall desire it, take their fifth part of the negro property, provided they give bond and security for their proportionate part of the expense of the raising and education of the younger children." "In the event that my children above mentioned should draw their proportionate parts of the negro property as they become of age, they have the right to go and cultivate the lands that I now own in the fifth district, near the lower line of this county, the said right to be equal in said lands for cultivation until a general division of my whole estate. But it is distinctly understood that there is nothing to force them to leave my present home, but it is my preference and desire that they should all remain together if they could do it in peace." "In the event that I do not have it done in my lifetime, I desire that my executors have the names of my two younger sons, James F. Green and William J. Green, changed to that of James F. Oliver and William J. Oliver by an act of the

legislature, and all three considered my lawful heirs." The provision last quoted appeared in the 14th item of the will.

Mrs. Oliver died about the year 1873. It does not appear whether or not she left any heir at law other than her sister, but presumably she did not. James F. Green died when a child. On the 1st day of March, 1883, George W. Oliver and his brother William J., who was never legitimated but who seems to have assumed the name of Oliver and who will hereinafter be so called, quitclaimed to their mother, Frances Green, for life, lot of land number 228 and the north half of lot number 227 in the fifth district, and.lots numbers 5 and 28 in the tenth district, of Randolph county. On the same day Frances Green and George W. Oliver conveyed to William J. Oliver certain lands in that county; and Frances Green and William J. Oliver conveyed to George W. Oliver certain other lands in that county. All of the lands above referred to were portions of the estate of James W. Oliver. George.W. Oliver died in 1887, leaving two children, Mrs. Ida J. Powell and Joseph F. Oliver. Apparently they were his only heirs at law. Frances Green died about the 1st of March, 1890, never having married. On November 3, 1890, William J. Oliver, as administrator upon the estate of George W. Oliver, executed and delivered to Arthur Hood a deed purporting to convey to him a half interest in the lands hereinbefore referred to as having been quitclaimed to Frances Green for life by her two sons. William J., as such administrator, had previously obtained from the court of ordinary an order granting him leave to sell all the realty of his intestate lying in Randolph county, and the deed to Hood recited that it was made in pursuance of this order. On April 10, 1897, he reconveyed to William J. Oliver the half interest in the realty just mentioned, and the latter was in possession of the same on the 10th day of February, 1899. On that day Mrs. Powell brought an action against him to recover an undivided fourth of the abovementioned lots 5, 28, and 227. There was in the petition no reference to lot 228. Attached to it was an abstract of title, from which it appeared that the plaintiff relied upon the will of James W. Oliver and the quitclaim deed which George W. Oliver and William J. Oliver executed and delivered to their mother on March 1, 1883. The petition was framed upon the theory that these three were on that day the only persons interested in the realty

left by the testator; that by the several exchanges of deeds which then took place the parties thereto undertook and intended to divide the estate of the testator and to set apart and designate the lands in which Frances Green was to have a life-estate; that, as to the reversionary interest therein after the expiration of that life-estate, there was an intestacy; that this interest passed to the plaintiff's deceased father, George W. Oliver, as the sole heir at law of James W. Oliver, and that she took by inheritance from her father.    Upon the assumption that this theory was correct, it is evident that the plaintiff's action should have been for an undivided half, and not an undivided fourth, of the premises described in her petition, the other half going to her brother; and an amendment to this effect was in fact made.    The petition described the lands divided among Frances Green and her sons as "belonging to the estate of the said James W. Oliver."    It was further amended by striking from it the words just quoted and making it so read as to allege that these lands had been "devised by the will of J. W. Oliver."    By another amendment, filed May 22, 1901, the plaintiff attacked the administrator's sale referred to above, alleging, in substance, that the order of the court of ordinary under which the administrator claimed the sale was made did not cover or embrace this property, and therefore the sale was without authority of law; and further, that William J. Oliver was himself the purchaser at that sale, and that the deeds from him to Hood and from Hood to him were really made for the purpose of concealing the true character of the transaction.    It was in this amendment alleged that the plaintiff did not receive any of the proceeds of this sale or derive any benefit therefrom, and that if the contrary should be found true, she was willing to make restitution.    In this amendment the sale was further attacked on the ground that "said property was not the property of the estate of George W. Oliver, but was the property of the heirs of J. W. Oliver, of which plaintiff was one, there being only two, herself and J. F. Oliver."    This amendment was demurred to, and the demurrer overruled.

The defendant filed an answer and various amendments thereto, by which he set up, among others, the following defenses: (1) The plaintiff had no right or title to the property for which she sued. (2) The division which took place on March 1, 1883, was made by all the persons then interested in the realty formerly belonging to

James W. Oliver, and it was agreed between the defendant and his brother George W. that after the death of their mother the lands quitclaimed to her as her share for life in the realty of James W. Oliver should be equally divided between these two brothers. This agreement was based upon stated considerations; was fully performed by the defendant, and is therefore binding upon the heirs of the said George W. (3) The property sued for was, by the defendant as administrator of George W. Oliver, duly sold to Arthur Hood, and the defendant fully accounted for the proceeds of the sale. Thus the plaintiff, as heir at law of her deceased father, obtained the full benefit of all her interest in that property as such heir. After the close of the evidence, the court directed a verdict for the plaintiff for an undivided one-fourth of the lands described in the plaintiff's petition, except the south half of lot number 227. The defendant sued out a bill of exceptions, assigning error upon the overruling of his demurrer to the amendment of May 22, 1901, to the plaintiff's petition, and upon the direction of the verdict in her favor. The plaintiff also filed a bill of exceptions, which will be taken up in its proper order. We will endeavor to discuss all the questions the determination of which is material to a proper disposition of both writs of error, and in so doing will set forth such additional facts as may be necessary to an understanding of the rulings we have made. Before proceeding further, it is proper to remark that both parties evidently treated the transactions which were had March 1, 1883, by Frances Green and her sons, as definitely ascertaining and fixing the lands in which, under the testator's will, she was to have a life-interest; and the controversy was not complicated by raising any question as to whether the widow of James W. Oliver as his heir at law inherited a share of the reversionary interest in those lands which would descend to her heirs, or any question as to the rights of Frances Green by inheritance as heir at law of her deceased son, James F. Green.

1. There was no error in overruling the demurrer to the plaintiff's amendment of May 22, 1901. The points made by this demurrer were, in substance, (1) that the amendment added a new and distinct cause of action; (2) that the executor of Arthur Hood's estate was not made a party; and (3) that the amendment set up no grounds for setting the administrator's sale aside. As will have been perceived, the plaintiff in her original petition was claiming

title to the property sued for as heir at law of her deceased father, George W. Oliver. It was consistent for her upon this line to allege and prove that his administrator had, without authority of law, undertaken to sell the property for which she was suing, and that the alleged sale was therefore void. So doing was in aid of her petition, and not setting up a new cause of action. It did not appear from any of the plaintiff's allegations that there was an executor of Arthur Hood's estate. The second ground of the demurrer was therefore "speaking" in character and can not be considered, even if the point thus attempted to be made would have been good if presented by a plea of nonjoinder of parties defendant. The third ground of the demurrer was bad because if the alleged administrator's sale was made without a proper order from the court of ordinary, it was void. As will have been seen from our preliminary statement, we have not overlooked the fact that in the amendment now under consideration the plaintiff further alleged that the administrator's sale was void because the property sold did not belong to the estate of George W. Oliver, but to the heirs of J. W. Oliver, of whom she was one. Treating this as an attempt by the plaintiff to add to her original position that she was claiming as heir of George W. Oliver an assertion that she also claimed as heir of James W. Oliver, the demurrer did not distinctly present the point that this was not allowable. The complaint therein that "the amendment added a new and distinct cause of action" could not fairly be said to mean more than that she could not attack the administrator's sale, and it is certain that the demurrer did not present the point that the petition and amendment, taken together, were bad for duplicity.

2. The next contention of the defendant below which we shall consider relates to the alleged error in directing the verdict. The position of his counsel is that there was no intestacy with regard to the lands in which Frances Green took a life-estate. This contention is based on the 14th item of the will, and is not, in our judgment, tenable. The testator did not by that item undertake to bequeath or devise any property. Even if he had before his death taken the proper steps to legitimate his sons James F. and William J., and they had accordingly upon his decease become his heirs, this naked fact would not have entitled them to take anything under the will not thereby disposed of. It is plain that there was

not even an attempt by the testator to make any distribution of the reversionary interest in the lands wherein Frances Green was to have a life-estate. Certainly, then, a mere request or direction to the executors to have these sons legitimated in case the testator failed to do so while in life did not clothe them with any rights as devisees. The position of the defendant below is not strengthened by the fact that the preamble of the will recites .that the testator " deems it right and proper . . that he should make a disposition of his property." If he did not, as was the case here, in fact make a disposition of a particular portion of his estate, the mere expression of an intention or desire to dispose of all of it must count for nothing. The case of *Haralson* v. *Redd*, 15 *Ga.* 148, strongly illustrates the correctness of what is now ruled. This will clearly appear from a reading of Judge Lumpkin's opinion in that case.

3. Though there was an intestacy to the extent above indicated, we are nevertheless satisfied that the court erred in directing the verdict of which complaint is made. The plaintiff, as we have shown, began her action on the theory that she inherited the interest in the lands for which she sued as heir at law of her father. If, by the amendment discussed above, she meant to also assert title as heir of her grandfather, she was taking two chances for a recovery. We may give her the benefit of this interpretation of her pleadings, and it will still result that the direction of the verdict in her favor was erroneous. Dealing first with her alleged right to recover as heir of her father, it is certainly true that she was bound and concluded by any contract he made with reference to the property in dispute. There was evidence to sustain the defense that he agreed with his brother, William J. Oliver, that upon the death of their mother the property they quitclaimed to her should belong to them jointly. This was testified to by William J. Oliver. In another division of this opinion we will undertake to show that his testimony on this point was admissible. There was also evidence to show that the court of ordinary granted William J. Oliver, as administrator, leave to sell all of the realty of his intestate. This was broad enough to cover the property in dispute, and a sale by the administrator to Arthur Hood was shown. If this transaction was merely colorable, and the administrator really purchased at his own sale, the plaintiff's remedy was, not to sue for the property, but to set aside the sale and have one made according to law.

There was, moreover, testimony tending to show that the sale to Hood was actual and bona fide.

4. As alleged heir of James W. Oliver, Mrs. Powell had no case at all. She was not his heir. Her father survived his father and inherited a reversionary interest in the realty which went under the will to Frances Green for life. As soon as James W. Oliver died, all of the estate and interest in the realty devised to Frances Green which was left therein after the expiration of her life-estate passed to his heirs at law, with right of possession postponed till her death. The widow was one of these heirs; but, as remarked above, both parties to the litigation ignored this fact. Unquestionably, "the maxim of the common law was that non jus sed seisina facit stipitem"; and accordingly it was held by the English courts that if an heir upon whom an "inheritance had been cast by descent dies before he has acquired the requisite seisin, his ancestor, and not himself, becomes the person last seised of the inheritance, and to whom the claimants must make themselves heirs." 4 Kent's Com. *386. "But this common-law doctrine is now changed by statute in England, and is generally rejected throughout the United States, where ownership or title to property is substituted for seisin, and the heir takes all the real estate owned by the ancestor at the time of his death." 24 Am. & Eng. Enc. L. 358 – 359. As a result of the maxim above quoted having been "practically abolished" in this country, it follows, in those States where the common-law rule is no longer given recognition, that "the heirs of a reversioner . . take as absolutely as if their ancestor were actually seised as of a freehold in possession"; and the "reversion of one dying intestate is to be distributed among his heirs in the same manner as estates in possession." 3 Wash. Real Prop. *410. This change in the law of inheritance was brought about in this State by certain statutes of distribution passed in 1785, 1789, and 1804, as was pointed out by Judge Nisbet in the opinion filed by him in the case of *Thompson* v. *Sandford*, 13 *Ga.* 238 (decided in 1853), wherein it was expressly held that the common-law maxim "seisina facit stipitem" was no longer of "force in Georgia, and that any estate, real or personal, held by any title, legal or equitable, without actual seizin, will descend to the heirs of the owners." Such is the rule which has since been recognized and applied by this court. See *Wilder* v. *Holland*, 102 *Ga.* 44, and cases cited.

5. This brings us to a consideration of the first point presented by the bill of exceptions sued out by Mrs. Powell. When William J. Oliver was offered as a witness in his own behalf, her counsel raised the objection that he was incompetent to testify, because of the fact that George W. Oliver was dead. This point was not insisted upon here, but counsel requested this court to again call attention to the propriety of enacting further legislation with a view to disqualifying a party from testifying in his own favor under such circumstances. So doing would surely be in accord with the spirit of the evidence acts now of force. Following, however, the plain legislative mandate contained in section 5270 of the Civil Code, to the effect that the letter and not the spirit of these acts shall control, we have been constrained to hold that in a suit instituted by the heirs at law of a deceased person, the defendant is competent to testify to transactions or communications between himself and such deceased person. See *Boynton* v. *Reese*, 112 *Ga.* 354, and cases cited.

6. The testimony of William J. Oliver as to the agreement between himself and George W. Oliver, mentioned above, was objected to on the ground that it related to a contract for an interest in land, which could not be proved by parol, and also that it varied the writings embraced in the three deeds of March 1, 1883. We do not think either of these objections was good. It appeared from the testimony of William J. Oliver that a part of the agreement in question was that he should pay off $4,000 of indebtedness due by the estate of his father, which he did, thus relieving the land set apart to Frances Green of an incumbrance. He also testified that the land which George W. Oliver got in the division was of greater value than that which the witness received, and that he consented to this as a part of the general contract between himself and his brother. Taking this testimony to be true, William J. Oliver fully performed his part of the oral agreement, and it was thus taken out of the statute of frauds. This parol evidence did not tend to vary or add to the terms of the three deeds; for none of them undertook to make any disposition of the land set apart to Frances Green after her death, or declare in whom the title thereto should then vest.

7. Plaintiff's counsel objected to the introduction in evidence of the deed from William J. Oliver, as administrator, to Arthur Hood. The objections were: (1) that the order of sale granted by the

court of ordinary to the administrator did not confer on him any authority to sell the property in that deed described; (2) that the land in question was in possession of Frances Green when the order of sale was granted, and therefore the order did not apply to it; (3) that no interest in this land had been inventoried or appraised as a part of George W. Oliver's estate, and accordingly the same was not covered by the order of sale; (4) that as the order was granted in the lifetime of Frances Green, it could only have contemplated a sale of a "remainder or reversionary interest," not the fee; and (5) that it had not been shown that this undivided interest in the land had in fact ever belonged to the estate of George W. Oliver. The first three objections are met and disposed of by the fact that the court of ordinary granted the administrator leave to sell "all the real estate belonging to the estate of George W. Oliver lying in [Randolph] county." This order was certainly broad enough to cover every interest in land owned by that estate, whether in possession or in expectancy. As the sale was not made till after the death of Frances Green, it is obvious that the fourth objection was not meritorious; and in view of the testimony of William J. Oliver referred to above, the fifth objection was not well taken.

8. The plaintiff also excepted to the court's refusal to direct a verdict in her favor for one half, instead of one fourth, of the lands described in her petition. As it was error to direct any verdict at all in her favor, and as she showed no shadow of title to any interest in the south half of lot 227, though she sued for a half interest in the whole of that lot, this assignment of error requires no further discussion.

*Judgment in the one case reversed; in the other, affirmed. All the Justices concurring.*