TATE *et al. v.* TATE *et al.*

1. Where a testator, after devising to Lina and Amanda a joint estate in land during the life of Lina, with remainder to Amanda, subject to be divested upon her dying without child or grandchild, directed that, "if Lina and Amanda die leaving no child or children or grandchildren, then in that event the property not disposed of in their lifetime revert back to those who now by law would be entitled to the same if I had made no will," those who would be entitled to take this land

29

upon the death of Lina and Amanda, without child or grandchild, were those who were heirs at law of the testator at the time of his death, and not those who would answer this description at the deaths of Lina and Amanda.

(*a*) In case of a devise to a class the general rule is that the members of the class are to be ascertained upon the death of the testator, since the will usually speaks from that date; and to take the case out of the general rule the intention to do so must be shown in language clear and unambiguous.

(*b*) Where the reversion in land is devised to heirs or next of kin of the testator, and in the devise there is in addition a reference to the statute of distribution, the general rule is almost without exception.

2. In an executory devise, where the contingency upon which the devised property is to vest in the executory devisees is as to the event or the subject-matter, but not as to the person, upon the death of such devisees before the happening of the event upon which the property was to vest in them, their heirs at law take as such the interest of such executory devisees.

3. An adjudication by a court of competent jurisdiction, had in a case between a third person and one of such heirs, that the lands embraced in such executory devise were absolutely in such third person and not in such heir, concludes such heir at law and his privies in estate from afterwards asserting title to such lands.

4. As against S. C. Tate and his privies in estate, the executrix of W. B. Tate has an absolute title in fee simple by virtue of said decree.

No. 4735. APRIL 18, 1925.

ADHERED TO ON REHEARING, JUNE 10, 1925.

Equitable petition. Before Judge J. B. Jones. Lumpkin superior court. December 13, 1924.

The controversy in this case finally narrowed down to one between the children of S. C. Tate, hereinafter referred to as the intervenors, and Jennie H. Tate, as executrix and trustee under the will of W. B. Tate, who will be hereinafter referred to as the executrix. The suit in which this controversy arose was brought in 1921 by certain heirs at law of Stephen Griffith, deceased, against his other heirs at law, for equitable partition of certain lands. At the appearance term of the case the children of S. C. Tate, deceased, intervened, claiming a certain interest in said lands as heirs at law of Stephen Griffith, who died testate on November 11, 1873. By the third item of his will the testator devised to Lina Griffith and his daughter, Amanda Griffith, persons of color, certain personal property and certain described lands, the latter being the property sought to be partitioned in this proceeding. By the fourth item the testator directed his executor to hold these lands until the death of Lina Griffith, unless from some cause unseen to

testator it should become necessary to sell some portion of it, in which event he was to sell only such portion as Lina and Amanda might consent to; and further provided that at Lina's death this land should go to and vest in his daughter Amanda. By the sixth item the testator directed "that all the property given in this will to my said daughter Amanda Griffith is given to her free from contracts, control, and sale of any husband that she marries, but is to be her sole and separate property; and if Lina and Amanda die leaving no child or children or grandchildren, then in that event the property not disposed of in their lifetime revert back to those who now by law would be entitled to the same if I had made no will."

The testator died unmarried and had no children. His parents died before him. The testator left as his only heirs at law one brother, Caleb Griffith, and two sisters, Sallie, who married Furr, and Mary, who married Tate. Said brother and sisters died after the death of testator and before the death of either Amanda or Lina. Amanda Griffith died July 11, 1902, and her mother, Lina, died June 7, 1910. Neither of them left a child or grandchild. Lina and Amanda remained in possession of these lands from the death of testator until 1887, when they joined in a deed of conveyance of them in fee simple to W. B. Tate, who took possession thereunder and so remained until his death in 1916, and since his death his executrix was in possession until a receiver was appointed in this proceeding. Mary Tate, sister of testator, died on June 16, 1886, intestate. She left as her only heirs at law her children, Saphronia Davis, Martha Maddox, Julia Davis, C. R. Tate, Wm. Tate, and S. C. Tate, the last being the father of all the intervenors, except Levi Darnell, Charles T. Darnell, and Edgar Darnell, the first-named Darnell being the husband and the last two being the only children of Mollie Darnell, the daughter of said S. C. Tate. S. C. Tate died before either Amanda or Lina. All of the intervenors were, on June 7, 1910, of age and sui juris. By a decree rendered on October 28, 1890, in the case of Stephen C. Tate v. Wm. Tate, Mrs. Julia B. Tate, Amanda and Lina Griffith, brought to the September term, 1889, of Pickens superior court, it was adjudged that title to a two-thirds interest in these lands in fee simple was in Wm. B. Tate, and that title to a one-third interest therein in fee simple was in Julia B. Tate. Mollie

Davis died in the fall of 1910, after the death of Lina Griffith. On April 1, 1891, Julia B. Tate conveyed to F. C. Tate these lands in fee simple, and on April 1, 1897, F. C. Tate conveyed them to W. B. Tate, by warranty deed in fee simple. W. B. Tate, from May 27, 1887, up to the time of his death, was in the open, actual and notorious possession of these lands, claiming the same under color of title, intervenors knew of the possession of W. B. Tate, and after his death his executrix had like possession thereof until the time of the bringing of these proceedings in Lumpkin superior court in 1921.

In the case of *Wm. B. Tate* v. *Satterfield* et al., after the reversal of the judgment in favor of the plaintiff in that case (see *Satterfield* v. *Tate,* 132 *Ga.* 256), a stipulation entered into between the parties in that case at the April term, 1911, of Lumpkin superior court, which was duly approved by the judge of said court, recites that it was conceded by the plaintiff that the defendants in said case who claim under the executory devisees of the reversion in these lands were entitled to a certain undivided interest therein, and the plaintiff therein agreed that upon the application for partition and sale for division of said property the verdict and judgment rendered in said case should in no way bind them or either of them as to the amount of their respective interests in said property, and that they should be allowed to show, if they could, that they were entitled to a larger interest than that specified in said verdict and judgment, but in other respects the verdict and judgment were to stand, and the question as to the amount of the respective interests of said defendants was to be raised or opened, if opened at all, in the proceedings to partition or sell said property and the distribution of the proceeds. In this stipulation it was further stated that the defendants were entitled jointly or in common to said respective interests. The intervenors in this case were not defendants in that case, but they would be entitled to their respective interests in this land as tenants in common with the plaintiff and the defendants in that case.

The case was submitted to the trial judge under an agreed statement of facts, which contained the facts hereinbefore set forth, and the further stipulation, "that, nothing to the contrary being shown, the said intervenors would be entitled, together, to be paid the interest claimed by them, 1/18th in the proceeds of

the sale of said land; but if by evidence it be shown that any conveyance by S. C. Tate in his lifetime, executed to Wm. Tate, of his interest or of what would have been his interest in the property, or there was in his lifetime any adjudication in a case in which he was a party which would have the effect of vesting such interest in Wm. Tate or any one else from whence Wm. Tate derived title, or if title by prescription has ripened in W. B. Tate or his estate as a matter of law, the said intervenors would be bound by such conveyance, or adjudication, or prescription," and "the interest claimed by said intervenors should be paid to Mrs. Jennie H. Tate, the executrix of the will of W. B. Tate." The trial judge rendered judgment in favor of the intervenors. To this judgment Jennie H. Tate, individually and as executrix and trustee, excepted and alleged that the judge erred: (1) In not holding and deciding as a matter of law that the intervenors were concluded and estopped by the verdict and judgment rendered against S. C. Tate in favor of W. B. Tate in Pickens superior court on October 28, 1890. (2) In adjudging that Jennie H. Tate, individually and as executrix and trustee, had not a good and valid title by prescription as against S. C. Tate and the intervenors. (3) In decreeing that said intervenors were entitled to receive 1/18 of the proceeds of said land, said decree being contrary to law and the evidence.

*Anderson & Roberts, William Tate Holland,* and *William Hart Sibley,* for plaintiffs in error.

*H. H. Perry,* contra.

HINES, J. (After stating the foregoing facts.)

1. By the third and fourth items of his will the testator gave a joint estate to Lina and Amanda during the life of Lina, and a defeasible vested remainder to Amanda, subject to be divested upon her dying without child or grandchild during the life of Lina. *Satterfield* v. *Tate,* 132 *Ga.* 256 (64 S. E. 60). By the sixth item the testator directed that "if Lina and Amanda die leaving no child or children or grandchildren, then in that event the property not disposed of in their lifetime revert back to those who now by law would be entitled to the same if I had made no will." Both Lina and Amanda died leaving no child nor children nor grandchildren. This being so, this land then reverted to those designated by the testator to take it in reversion. How are the

persons, who were entitled to take the reversion in this land, to
be ascertained? Were they those who answered the description of
heirs at law of the testator at the date of his death, or those who
answered that description at the death of the life-tenants, or the
survivor of the latter? In the limitations of estates, or in framing
contingencies, the word *then,* unless something in the context
makes a different meaning necessary, is to be regarded as a word
of reference or reasoning. It may, however, on such occasions be
used in its grammatical sense, that is, as an adverb of time. In
the above devise this word is used as an adverb of time, because
it is used in juxtaposition with the phrase, "in that event;" and to
give it a different construction would make the testator use it and
the above phrase in the same sense, or without any meaning. By
treating this word as an adverb of time, we have the testator saying,
that, if Lina and Amanda should die leaving no child or grand-
child at that time, in that case this land was to revert to those who
would be entitled to it if he had made no will. *Harris* v. *Smith,*
16 *Ga.* 545, 557; *Dudley* v. *Porter,* Id. 613, 617; *Roberts* v. *Wadley,*
156 *Ga.* 35 (118 S. E. 664); Beauclerk *v.* Dormer, 2 Atk. 308, 26
Reprint, 588. A testator can unquestionably, if he thinks fit,
limit an estate in his lands to such persons as shall at a particular
time named by him sustain a particular character. Wharton *v.*
Barker, 4 K. & J. 483, 70 Reprint, 202; *Crossley* v. *Leslie,* 130
*Ga.* 782, 787 (61 S. E. 851, 14 Ann. Cas. 703). If nothing further
appeared, it would seem to follow that those, who would take the
reversion in these lands upon the happening of the named con-
tingency, were those who sustained to the testator the relation of
his heirs at law at the death of the life-tenant.

But the devise in this case is to a class. *Toucher* v. *Hawkins,*
158 *Ga.* 482 (123 S. E. 618). The general rule in such a case
is that the members of the class are to be ascertained upon the
death of the testator, since the will usually speaks from that day.
30 Am. & Eng. Enc. L. (2d ed.) 719; *Crossley* v. *Leslie,* supra.
Under a gift to heirs or next of kin, the objects of the gift are to
be ascertained at the death of the testator; and where there is in
addition a reference to the statute of distributions, or to intestacy,
this rule is almost without exception. 30 Am. & Eng. Enc. L. 726;
Doe *v.* Lawson, 3 East, 143. But to take a case out of the gen-
eral rule, the intention to do so must be shown in language clear
and unambiguous. Wharton *v.* Barker, 4 K. & J. 483, 70 Reprint,

202. The language used in this item of this will is not so clear and unambiguous as to take this case out of the general rule. On the contrary the language of the testator discloses a purpose on his part that these lands, after the death of Lina and Amanda, in the event they left no child or grandchild, should revert to those who by law would be entitled to the same at his death if he had made no will. If the testator had died intestate, these lands would have gone to those who would be entitled thereto at his death under our statute of distribution, and not to those who answered that description at the death of the life-tenants. This conclusion is strengthened by the use of the word, *now*, in this item of the will. This word is an adverb. The special use or purpose of an adverb is to modify a verb, adjective, or another adverb. In this provision this word was used, not to qualify the phrase "by law," but the verb "would be entitled." But it is insisted that this word, *now*, could have no reference to the heirs of the testator, because he could have no heirs at the time the will was executed. This argument overlooks the fact that a will only speaks from the death of the testator. The maker of a will, though dead, then speaks through his will. The words used by him must be construed in the sense which they would bear if spoken by him at the time his will takes effect. The word, *now*, refers to the time when the will went into effect. By its use the testator in effect said that those who were to take the reversion in these lands were those who would be entitled to them at his death, if he died intestate. We think this is the construction put upon this provision of this will by the court in *Satterfield* v. *Tate*, supra. So we are of the opinion that the persons who were to take this reversion on the happening of the above contingency were those who were heirs at law of the testator at the time of his death.

2. The testator left as his sole heirs at law one brother, Caleb Griffith, and two sisters, Sallie and Mary. This brother and these sisters died before the death of either Amanda or Lina. In these circumstances did their interest in these lands descend to their heirs at law? It is insisted by learned counsel for the intervenors that this devise was a contingent one, the contingency being as to the persons who were to take, the subject-matter of the devise, and the event upon the happening of which these executory devisees would be entitled to take. In the view which we have taken of

this case, this devise was contingent as to the event, upon the happening of which the heirs at law of the testator were to take the reversion. Under the power contained in the fourth item of the will, the executor, with the consent of the life-tenants, could probably have sold these lands, and thus create a contingency as to the subject-matter of the devise. *Darnell* v. *Barton,* 75 *Ga.* 377. But under the construction which we have placed upon the sixth item of the will, there was no contingency as to the persons who were to take. Upon the death of the testator, at which time his will went into effect, those who by law would be entitled to these lands if he had made no will became certain. They would have inherited these lands if testator had made no will. In *Sharman* v. *Jackson,* 30 *Ga.* 224, this court was dealing with a deed of gift of certain negroes by a mother to her son, which were, at the death of the son, to be equally divided among the heirs of the son. In that case this court held that this instrument created a remainder which was contingent as to the persons who were to take, as the heirs of the body of the son could not be ascertained until his death. So, when this deed of gift took effect, the remainder to the heirs of the body of the son was contingent, because they could not be then ascertained and would not be ascertained until the death of the son. In the instant case the heirs of the testator were ascertained the moment his will took effect, and in consequence there was no contingency as to the persons who were to take as his heirs at law. If the devise in this case had created a contingent remainder, and the contingency was not as to the persons who were to take, and the remainderman died before the time arrived for possessing his estate in remainder, his heirs would have been entitled to his remainder interest. Civil Code (1910), § 3677. This devise, however, created a contingent, executory devise of the reversion in these lands. Civil Code (1910), § 3915. The contingency, however, was not as to the persons who were to take. This being so, the heirs of the executory devisees who died prior to the death of the life-tenants took the interest of their ancestors in these lands. The same rule in this respect applies to an executory devise where the contingency is not as to the persons who are to take, as in the case of the contingent remainder where the contingency is not as to the persons who are to take. *Irvin* v. *Porterfield,* 126 *Ga.* 729 (55 S. E. 946). This being so, when

Mary Tate died her heirs at law, including S. C. Tate, took her interest in these lands by descent from her, and not as purchasers from the testator. It follows that they took nothing under the will of the testator, and that they could only take an interest in these lands as heirs at law of their deceased father, S. C. Tate.

3. By the decree rendered on October 28, 1890, in Pickens superior court, in the case of Stephen C. Tate v. Wm. B. Tate, Mrs. Julia B. Tate, and Amanda and Lina Griffith, it was adjudged that title to a two-thirds interest in these lands in fee simple was in said Wm. B. Tate, and that the title to a one-third interest therein in fee simple was in Julia B. Tate. This was a solemn adjudication that S. C. Tate had no title to or interest in these lands. This decree bound him and his privies in estate. The intervenors in this case are his privies in estate. It follows that they are bound by this decree against the title of their ancestor, and that they had no title to or interest in these lands as purchasers from the testator or as heirs at law of S. C. Tate.

4. This renders it unnecessary to determine the question whether the executrix of Wm. B. Tate had prescriptive title to these lands. As against S. C. Tate and his privies in estate, she has an absolute title in fee simple by virtue of said decree.

5. Applying the above principles, it follows that the court erred in awarding any portion of the proceeds of these lands to the intervenors, and in not awarding the same to the executrix of Wm. B. Tate.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*

ON REHEARING.

HINES, J. The motion for a rehearing is based upon the fact that we overlooked the principle of law announced in the second headnote and in the second division of the opinion in the case of *Payne v. Rosser,* 53 *Ga.* 662. After rightly recognizing the principle that the contingent interests of executory devisees are transmissible to their heirs, where the contingency is not as to the person, but as to the event upon the happening of which such interests are to fall into possession, this court announced this common-law doctrine, to wit: "That such interests did not descend to and vest in those who were heirs *at the time of their decease,* but to such as answered the character of heirs to them respectively,

*when the estate* in Mary" (such executory devisee) "was determined in 1872, and the executory devise fell into possession." It is insisted by the able and distinguished counsel who made this motion for a rehearing, and whose integrity and fairness are as unquestioned as his ability, that this principle of law is still the law in this State, and should control the decision in this case. As the decision in that case was by a full bench, the above principle became the law of this State, if it was involved and decided in that case, and if it does not conflict with older decisions of the court. Furthermore, we felt that, being a rule governing the devolution of landed interests in this state, if once adopted by this court as the law, it should not be lightly disregarded or overruled. For this reason we granted a rehearing in order that the question might be more fully considered.

We do not think that the point which we are considering was involved in that case, and therefore the declaration of the above principle as the law of this State was obiter dictum. In that case the person who claimed to have inherited the interests of the executory devisee in the land involved in that case was the sole heir of the devisee both at the time of the latter's death and at the time when the estate fell into possession. So the only question in that case was, whether the interests of a contingent executory devisee, the devise being one of land, and the contingency being as to the event upon which the estate would vest in possession and not as to the person who was to take, descended to the heirs of the executory devisee; and this court in that case properly held that such an interest descended to the heirs of such a devisee.

The common-law doctrine, announced in *Payne* v. *Rosser,* was based upon the common-law maxim, non jus sed seisina facit stipitem. Accordingly it was held by the courts in England, "that if an heir upon whom an inheritance had been cast by descent dies before he has acquired the requisite seisin, his ancestor, and not himself, becomes the person last seized of the inheritance and to whom the claimants must make themselves heirs." *Oliver* v. *Powell,* 114 *Ga.* 592 (4) (40 S. E. 826).

Now, non seisina sed jus facit stipitem, the old common-law doctrine, is changed by statute in England, and is generally rejected throughout the United States, where ownership or title to property is substituted for seisin, and the heir takes all the real

estate owned by the ancestor at the time of his death. Now "the heirs of a reversioner . . take as absolutely as if the ancestor were actually seized as of a freehold in possession." 3 Washburn on Real Property, *410. In *Thompson* v. *Sandford,* 13 *Ga.* 238, this court held: "The rule of the common law, seisina facit. stipitem, held not to be in force in Georgia, and that any estate, real or personal, held by any title, legal or equitable, without actual seizin, will descend to the heirs of the owners." This principle was reannounced and followed in *Anderson* v. *Burney,* 147 *Ga.* 138 (93 S. E. 93). So we are clearly of the opinion that the ancient doctrine of the common law, upon which counsel for the defendants in error rely, has been repudiated by this court, as it has been in most of the courts of this country. 18 C. J. 821, § 24. It follows that we must adhere to the rulings already made in this case.

*All the Justices concur except Gilbert, J., absent for providential cause.*