## HUXFORD *v.* SOUTHERN PINE COMPANY OF GEORGIA *et al.*

1. A bill of exceptions which recites that a motion to dismiss a petition was made upon various grounds and overruled, and that to this ruling "the defendant then and there excepted and now assigns the same as error," and that a motion for a new trial was made and overruled, and to this ruling "the defendant excepted and now assigns the same as error," specifies "plainly the decision complained of and the alleged error," and "specifically sets forth the error alleged to have been committed," within the meaning of the Civil Code, §§5527, 5528.

2. A petition by an owner of land and another who held a timber lease

from him, alleging that when the lessee entered into possession and undertook to exercise the privileges granted under the lease, the defendant by threats of violence intimidated the servants of the lessee and drove them away from the land, and by intimidation continues to prevent the lessee and his servants from entering upon the land, thereby making it impossible for the lessee to exercise his rights under the lease, and praying for permanent injunction to restrain the wrongful conduct complained of, sets forth a cause of action, authorizing the granting of a writ of injunction, as against a motion to dismiss, in the nature of a general demurrer, made at the trial term.

3. The courts of this State take judicial notice of the governmental survey of its territory and the relative location of its counties as originally laid off, as well as the effect of legislative enactments creating new counties and fixing the boundary lines thereof.

4. The act of 1874, regulating the manner of returning wild lands for taxes, authorizes the comptroller-general to issue an execution against an unreturned lot of wild land for the taxes of that year.

5. In actions of trespass to realty, ownership of the premises is incidentally involved; and while in such cases a special finding by the jury as to ownership is not required, the incorporation of such a finding into the verdict will not vitiate it, if the verdict is in other particulars regular and proper.

6. The finding of the jury in favor of a permanent injunction did not, in the light of the petition and evidence, have the effect of granting an injunction which was mandatory in its nature.

7. The evidence demanded the verdict directed by the court, and no sufficient reason has been shown for reversing the judgment.

Argued June 21,—Decided November 13, 1905.

Equitable petition. Before Judge Parker. Coffee superior court. December 1, 1904.

The Southern Pine Company of Georgia, a corporation, and J. I. Crawley were the plaintiffs and C. Huxford was the defendant. The petition alleged that the Pine Company was the owner of two described lots of land and had a perfect title thereto, an abstract of which was attached to the petition; and that it had authorized Crawley to enter upon one of the lots and box the timber thereon for turpentine, and to cut the timber suitable for cross-ties on the other. The petition then proceeded as follows: "Your petitioner further shows, that, when the said J. I. Crawley undertook to exercise the privilege which had been granted unto him by the said Southern Pine Company of Georgia, and had made arrangements to box and work the timber on said lot 236 aforesaid for turpentine and to cut and remove the timber for cross-tie purposes on said lot 189 aforesaid, and had his agents, servants, and employees enter

thereon for these purposes respectively, that thereupon C. Huxford of said county came on said lots of land where the employees of said J. I. Crawley were at work and by threats of violence intimidated the employees of said J. I. Crawley and drove them away from their work, and has since continued his said threats, and by intimidation continues to prevent the said J. I. Crawley and his employees from entering upon said lots of land and boxing and using the same for turpentine or cutting, felling, and removing the timber for cross-ties therefrom. And the said C. Huxford, by and through his intimidation aforesaid, makes it impossible for your petitioner to exercise their rights of ownership in and to the aforesaid property; and unless the said defendant is restrained and enjoined from further interference with your petitioners' rights in the premises, he will continue to intimidate the employees of said J. I. Crawley, and thereby defeat his right to exercise the privilege he has and holds in the timber aforesaid, and as well defeat the right of your petitioner, Southern Pine Company of Georgia, who is the true and lawful owner thereof, and thus irreparably injure and damage your petitioners respectively; and, being without remedy at common law, they therefore ask the aid and intervention of a court of equity for protection." There was no allegation of insolvency. The prayers were, for an interlocutory injunction, and, upon the final hearing, for a permanent injunction, for damages, and for process. At the trial term the defendant moved to dismiss the petition upon various grounds, among them that there was no cause of action; that there was no allegation of insolvency or that the damages would be irreparable, nor that an injunction was necessary to avoid a multiplicity of suits; that the abstract of title attached to the petition is insufficient; that the petition asks that defendant be enjoined from committing a crime, not affecting the property of plaintiffs; and that there is an adequate remedy at law for a recovery of damages for the alleged injury. The motion was overruled, and the defendant excepted pendente lite. The case proceeded to trial, and at the close of the plaintiffs' evidence, the defendant introducing no evidence, the court directed the jury to find a verdict in favor of the plaintiffs for a permanent injunction. The defendant made a motion for a new trial, which was overruled. Error is assigned in the bill of exceptions upon the judgment overruling the motion to dismiss, and upon the refusal to grant a new trial.

*Lankford & Dickerson,* for plaintiff in error.

*John C. McDonald,* contra.

Cobb, J. 1. There was no motion to dismiss the writ of error, but the point is raised in the brief of counsel for the defendant in error that the assignments of error are not sufficiently definite and specific to be considered. The bill of exceptions recites that a motion to dismiss the petition was made upon grounds therein set forth, and was overruled; and the assignment of error is in the following language: "to which said ruling the defendant then and there excepted and now assigns the same as error." This was sufficient to bring under review any question raised by the motion to dismiss. *Melson* v. *Thornton,* 113 *Ga.* 99 (2). The bill of exceptions also recites that a motion for a new trial was overruled, and the assignment of error on this judgment is in the following language: "to which said order the defendant excepted and now assigns the same as error." This assignment of error is in compliance with the rule of this court in reference to assignments of error of the character now under consideration. Rule of Court 6, Civil Code, §5605.

2. The plaintiffs are not the owners of timber complaining of a trespass by a timber cutter, but they are timber cutters themselves, whose right to cut is alleged to have been interfered with by one who they allege is not the owner nor in any way interested in the timber. It is apparent, therefore, that the timber cutter's act (Civil Code, §4927) has no application to the case. The case must therefore be determined upon general equity principles governing where an application is made to enjoin a wrong-doer or trespasser from interfering with a property right of another. The circumstances under which a court of equity will by injunction interfere in such a case are set forth in the Civil Code, §4916, which is in the following language: "Equity will not interfere to restrain a trespass, unless the injury is irreparable in damages, or the trespasser is insolvent, or there exist other circumstances which, in the discretion of the court, render the interposition of this writ necessary, among which shall be the avoidance of circuity and multiplicity of actions." There is no allegation of insolvency. The petition sets forth the wrongful conduct complained of, which is the interference with the plaintiff in the right to the exclusive control of their property and the quiet possession of the same, and the

narrative concludes with the averment that the plaintiffs are without a remedy at law and would be irreparably injured and damaged. A mere general averment that the damages resulting from a wrongful act would be irreparable, being only a conclusion of the pleader, is generally not sufficient. *Burrus v. Columbus,* 105 *Ga.* 46 (2). It is necessary that the petition should set forth the facts so that the court may determine whether the damages would be of this character. It is therefore necessary to determine whether, under the averments of the petition, such a case is made as would authorize a court of equity to interpose in behalf of the plaintiffs and grant the injunction prayed for. The question of the sufficiency of the petition not having been raised until the trial term, the averments of the petition will not be subjected to that scrutiny which would be required if the defects had been pointed out by special demurrer. While it is not alleged in terms that the wrongful acts complained of would give rise to a multiplicity of actions for damages, still it is apparent that the only remedy which the plaintiffs would have at law would involve a multiplicity of actions. The Pine Company is the owner of the land, and Crawley holds a timber lease under it. The Pine Company is entitled to the peaceful and uninterrupted occupation of its property, either by itself or its tenant, and Crawley is entitled to possession of the same character under his lease. The servants of Crawley have been driven from the place by the wrongful act of the defendant, and by intimidation which continues from day to day he prevents Crawley and his servants from using the timber upon the property for the purposes for which, under the lease, he had a right to use it. Every day that he is deprived of the possession of the premises gives him a right of action against the defendant to recover such damages as would result from this wrongful act. Frequent acts of trespass accompanied with a threat to continue constitute a sufficient reason to grant an injunction. Bisph. Prin. Equity (4th ed.) 490; 1 High on Injunctions (3d ed.), 536. ° In *Gray Lumber Co. v. Gaskin,* 122 *Ga.* 351, it was said: "An action at law for damages would have been a complete remedy for the injury sustained prior to the suit, but it would not have prevented further trespasses. Ought the plaintiff to be harassed and annoyed by being required to bring a new suit every day as long as the trespasses continued, when the whole controversy could be settled in one suit? As has been shown above, the

code expressly authorizes the judge, in his discretion, to grant an injunction to restrain a trespass in any case where under equitable principles the writ should issue, and enumerates among such cases the prevention of a multiplicity of suits." But even if he were to bring suit each day for the wrongful conduct of the defendant on the day preceding, the damages recovered in all such suits would not be an adequate compensation for the wrong done by depriving him of the right to cut and dispose of the timber as he is authorized to do under the lease. It is not a sufficient reply to an application for an injunction that the defendant has a remedy by suit at common law for damages, but it must appear in addition that the common-law remedy is adequate and complete. Even if in a suit for damages against the defendant for wrongfully preventing Crawley from taking possession of the timber a recovery could be had for the value of the standing timber, there could not be a full recovery for all the damages sustained by him, for the reason that the profits resulting to him from the marketing of the timber after it has been cut, or other uses to which he may lawfully put the same, are dependent upon so many contingencies that it is impossible to estimate what such profits would be. The allegations of the petition are sufficient not only to make a case of irreparable injury, as against a motion to dismiss in the nature of a general demurrer, but also to show that the only remedy at law available to the plaintiffs involves a multiplicity of actions.

But it is said that the application is one merely to prevent the commission of a crime, and that a court of equity has no criminal jurisdiction, and that an injunction will not be granted for the purpose of preventing a criminal act. The general rule undoubtedly is that no injunction, or order in the nature of an injunction, will be granted to restrain proceedings in a criminal matter; but where it is evident that a right of private property is involved and is invaded, or is about to be invaded, by acts which are criminal in their nature, equity will interfere by injunction to protect such right and prevent the commission of the criminal act. See cases cited, 7 Ency. Digest Ga. Rep. 347. None of the grounds in the motion to dismiss was well taken, and there was no error in overruling the same.

3. While an assignment of error upon the admission of evidence will not be considered unless it appears that the objection relied on

was made at the time that the evidence was offered, still when evidence has been admitted either with or without objection, the losing party may in a motion for a new trial raise the question that the evidence as admitted was not sufficient to authorize the verdict rendered. A party may allow a deed relied upon by his adversary to go in evidence without objection, but his failure to object does not preclude him from urging in his motion for a new trial that the deed is invalid for some reason appearing upon the face of the same, or for other reason appearing in the evidence. While a number of documents were admitted in evidence without objection, the defendant in his motion now complains that the verdict is unsupported, for the reason that the evidence as a whole, including these documents, was not sufficient to authorize a finding in favor of the plaintiffs. The petition alleged that the Pine Company was the owner of lots Nos. 189 and 236 in the 7th district of Clinch county. In the plaintiffs' chain of title to one of the lots appears a grant from the State to lot No. 189 in the 7th district of Appling county, and a deed to lot No. 189 in the 7th district of Appling county. It appears from the abstract of the deed in the brief of evidence that the 7th district of Appling county is now the 7th district of Clinch county. But even if this did not appear, the courts would take judicial notice of that fact. *Stanford* v. *Bailey*, 122 *Ga.* 404.

4. There was in the plaintiff's chain of title a tax deed which was based upon a sheriff's sale under an execution issued by the comptroller-general against an unreturned lot of wild land. The execution was issued for the taxes of the year 1874. It is claimed that this deed is void upon the ground that it did not appear from the evidence that there was an advertisement by the comptroller-general of the land as unreturned wild land, in which the owner was required to come forward and pay taxes upon the same as required by law, before the execution was issued; and for the further reason that the execution was void, the taxes for which the same was issued being for the year 1874, the act under which the execution was issued having been passed after the beginning of that year. The deed recites a compliance with the provisions of the act of 1874 (Acts 1874, p. 105), and the execution is regular upon its face. But even if this were not so, there is a presumption that the comptroller-general complied with his duty as to advertising in the manner required by the act, and the burden of proof was upon the de-

fendant to show that he did not. *Bedgood* v. *McLain,* 94 *Ga.* 283 ; see also *Bentley* v. *Shingler,* 111 *Ga.* 780, and cit. The act of 1874 was approved February 28, 1874. It provided that from and after its passage wild lands owned by the citizens of this State should be returned to the tax-receiver of the county of their residence by the first day of July in each year, and such land owned by non-residents should be returned to the comptroller-general by the first day of August in each year. Provision was then made for the collection of taxes upon both returned and unreturned wild land. It was clearly contemplated that this act should apply to the taxes of the current year, as it was approved prior to the time then fixed by law for the valuation of property for taxation, and also several months before the time fixed in the act for the return of the property affected by the act. No taxes for 1874 were due on the 28th day of February of that year, and the date for the valuation of all property at that time was the first day of April in each year. The lot in question not having been returned for taxation in the year 1874 in the manner prescribed by the act, the comptroller-general had authority to issue an execution against the lot for the taxes of that year.

5. The jury returned a verdict finding that the lots in dispute belonged to the Southern Pine Company, and that Crawley had the right to exercise his privilege under the lease; also finding in favor of a permanent injunction against the defendant. It is claimed that that part of the verdict which finds that the lots in dispute belong to the Southern Pine Company is illegal, for the reason that the land is situated in Clinch county, and the present suit was brought in Coffee county where the defendant resides, and that the superior court of the latter county has no jurisdiction to determine any question of title to the land. If the purpose of the suit were to recover possession of the land, of course the superior court of Coffee county would have no jurisdiction. Such was not the object to be attained by the judgment prayed. It was simply to restrain the defendant from doing acts prejudicial to the rights of the plaintiffs, one of whom claimed to be the owner of the land. The title to the property was incidentally and collaterally involved, but it was not such a suit respecting title to land as under the constitution is required to be brought in the county where the land lies. It was incumbent upon the plaintiffs to show that they had such an

interest in the property as a court of equity would protect, and they showed this interest by showing a complete chain of title. While it was not necessary for the jury to specifically find that the property belonged to the plaintiff, it was necessary that the jury, before they could find in favor of a permanent injunction, should believe that ownership in the plaintiff was established. The insertion in the verdict of the finding as to ownership will not vitiate the verdict.

6. It is contended that the verdict of the jury is in fact the finding of a mandatory injunction, and that such an injunction is unauthorized by the law of this State. It is said that the effect of the injunction is to transfer the possession of the property from the defendant to the plaintiff. We do not think this is a proper construction to be placed upon the prayer and petition, or upon the verdict which is in accordance with that prayer. It does not appear either from the petition or from the evidence that the defendant was in possession of the land. So far as the record discloses, he has simply driven the servants of Crawley from the land, and by intimidation prevented them from going upon the same. Whether he was in possession himself at the time of the wrongful acts complained of, or whether he was out of possession and by intimidation kept the servants of Crawley from entering, does not clearly appear. It is to be inferred from the allegations of the petition that he was not in possession, and there is nothing in the evidence to indicate that he was. We do not think that the injunction as it stands could be construed into one which is mandatory in its nature.

7. The defendant introduced no evidence. A witness for the plaintiff testified that the defendant told him he did exactly what was alleged in the petition, that he claimed the land, that he ran the hands off as set out in the petition, and that he was not going to let the plaintiffs get the timber, as it was his. This evidence uncontradicted not only warranted but required the verdict which the court directed. There was no error in directing the verdict, and no reason has been shown for reversing the judgment.

*Judgment affirmed.　All the Justices concur, except Beck, J., not presiding.*