## DARLEY *et al. v.* STARR.

1. The question of sufficiency of description in a declaration in ejectment may be raised by general demurrer.    An oral motion to dismiss is in the nature of a general demurrer and may be made after pleading.

2. A declaration in ejectment should describe the premises in dispute with such definiteness that, in the event of a recovery by the plaintiff, the sheriff could execute the writ of possession from the description given.

3. A declaration in ejectment which upon its face discloses a patent ambiguity is subject to general demurrer.

4. Judicial cognizance is taken of the fact that the sixth land district of originally Wilkinson (then Montgomery, but now Wheeler) county is divided into duly numbered land lots of 202 1-2 acres each, in the shape of a square, and that the lines of the lots are run at an angle of forty-five degrees, and not north and south and east and west.

5. A declaration in ejectment which described the land in dispute as "fifty acres of lot of land No. 17 in the 6th district of formerly Montgomery, now Wheeler county, Georgia, more particularly described as being fifty acres lying in a square in the southeast corner of said lot," does not describe the premises with such definiteness that, in the event of a recovery by the plaintiff, the sheriff could execute the writ of possession from the description given.

No. 1643.    APRIL 13, 1920.

Ejectment. Before Judge Highsmith. Wheeler superior court. July 29, 1919.

*Eschol Graham* and *Hardeman, Jones, Park & Johnston,* for plaintiffs in error.

GEORGE, J. A suit in ejectment was commenced to recover "fifty acres of lot of land No. 17 in the 6th district of formerly Montgomery, now Wheeler county, Georgia, more particularly described as being fifty acres lying in a square in the southeast corner of said lot." At the trial the defendants moved to dismiss the declaration, upon the ground that the land in dispute was not described with such definiteness that, in the event of a recovery by the plaintiff, the sheriff could execute the writ of possession from the description given. The court was asked to judicially recognize that the sixth land district of originally Wilkinson, then Montgomery, but now Wheeler county, is divided into duly numbered lots of 202 1-2 acres each in the shape of a square, and that the lines of the lots are run at an angle of forty-five degrees, and that the lines of the lots are not run north and south and east and west. The court overruled the motion; and the case is now before this court on exceptions to that ruling and to the refusal of the trial court to dismiss the declaration.

1. The question of sufficiency of description may be raised by general demurrer. *Clark* v. *Knowles,* 129 *Ga.* 291 (58 S. E. 841); *Scoville* v. *Lamar,* 149 *Ga.* 333 (100 S. E. 96). The oral motion

to dismiss is in the nature of a general demurrer, and may be made after pleading. *Crosby* v. *McGraw*, 133 *Ga.* 561 (66 S. E. 897).

2, 3. It is of course settled that the declaration in ejectment should describe the premises in dispute with such definiteness that, in the event of a recovery by the plaintiff, the sheriff could execute the writ of possession from the description given. Powell on Actions for Land, § 25; *Harwell* v. *Foster,* 97 *Ga.* 265 (22 S. E. 994); *Clark* v. *Knowles, Scoville* v. *Lamar,* supra. It is equally well settled that a patent ambiguity in the description can not be removed by extrinsic evidence. A declaration in ejectment which upon its face discloses a patent ambiguity is subject to general demurrer. Unless the ambiguity is patent, and appears on the face of the declaration, the suit can not be dismissed for uncertainty in the description. See Campbell *v.* Johnson, 44 Mo. 247; Johnson *v.* Ashland Lumber Co., 52 Wis. 458 (9 N. W. 464); Dickens *v.* Barnes, 79 N. C. 490; 2 Devlin on Real Estate (3d ed.), § 1010.

4, 5. This court will take judicial cognizance of the boundary lines of the counties originally laid off in accordance with the governmental survey which divided the counties into districts designated by numbers, and subdivided the territory embraced in these counties into original land lots duly numbered. The original plats showing the boundary lines and relative locations of the districts and land lots in each county are of file in the office of the Secretary of State. *Stanford* v. *Bailey,* 122 *Ga.* 404 (50 S. E. 161); *Huxford* v. *Southern Pine Co.,* 124 *Ga.* 181 (3), 182 (52 S. E. 439); *McCaskill* v. *Stearns,* 138 *Ga.* 123 (74 S. E. 1032). An act of the General Assembly, assented to May 11, 1803, provided that the territory acquired from the Indians by treaty concluded near Fort Wilkinson on the 16th day of June, 1802, should be laid off into three counties; that part of said territory lying south of the Altamaha river to form and constitute one county to be called Wayne; and that part of said territory lying south of the Oconee river to be divided by a line to be run according to the true meridian from the Oconee river, at Fort Wilkinson, south, forty-five degrees west, to the Indian boundary line, into two counties, the eastern to be called Wilkinson and the western to be called Baldwin. The act further provided that

the counties of Wilkinson and Baldwin should be divided into five districts each, "as nearly equal in extent as circumstances will permit, by lines which shall run parallel with the dividing line between those counties," and "that the lands contained in the several districts shall be divided by lines running parallel with the dividing lines of districts, and by others crossing them at right angles, so as to form tracts of forty-five chains square, containing two hundred and two and a half acres each, plainly and distinctly marked, in a manner different from the ordinary mode heretofore pursued for marking lines in this State, to be pointed out by the surveyor-general." Acts Ex. Sess. 1803, p. 3. As appears from the map of the survey adopted by the State and of file in the office of Secretary of State, the land lying between the lower reaches of the Ocmulgee and Oconee rivers, in originally Wilkinson, later Montgomery, now Wheeler county, was laid off in accordance with the requirements of the act of 1803; that is to say, the lines of the lots are run at an angle of 45 degrees. In *Payton* v. *McPhaul,* 128 *.Ga.* 511 (58 S. E. 50, 11 Ann. Cas. 163), it was held that "100 acres in the southeast corner" of a given lot of land, which contains 490 acres and is in the form of a square, is sufficient as a description. It was there said: "The corner of the lot is to be taken as a base point from which two sides of the tract of land conveyed shall extend an equal distance, so as to enclose by parallel lines the quantity conveyed." There, however, the lot lines run north and south and east and west; and the same is true of the lot of land referred to in *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 37, 127 Am. St. R. 212). Where the base line of the survey is a line running north and south or east and west, rulings in these cases apply; but in this case the base line is a line running at an angle of forty-five degrees. Lot seventeen in the sixth district of Wheeler county has a north, an east, a south, and a west corner, but no southeast corner. The land described in the declaration is "fifty acres in a square." If the plaintiff should recover, to what corner of the lot would the sheriff proceed, in accordance with the mandate of the writ, to admeasure the fifty acres in the form of a square? If he should proceed to the east corner, the ambiguity is at once apparent, because fifty acres in the east corner of the lot, in the form of a square, may with equal

propriety be designated either as the northeast or the southeast quarter of the lot. Should he measure off fifty acres in the form of a square in the south corner of the lot, the same ambiguity arises; that is to say, a tract of land lying in the form of a square in the south corner may with equal propriety be designated as either the southwest or the southeast quarter of the lot. Our conclusion, therefore, is that a patent ambiguity in the description of the land is apparent upon the face of the declaration, and that the ambiguity is incapable of removal by extrinsic evidence. It is unnecessary to add that the declaration contained no descriptive terms other than those set out in the first sentence of this opinion. The plaintiff did not offer to amend the declaration.          *Judgment reversed. All the Justices concur.*