1. An exception to refusal to award a nonsuit will not be considered where the jury has rendered a verdict against the defendant, and exception is taken to refusal to grant a new trial on the ground that the verdict was not supported by the evidence.
2. W. T. M. by deed of gift conveyed described land to his daughter A. L. G., "bodily heirs and assigns forever all, if no bodily heirs then to be left to her choice any member of Morgan family, brother or sister, nephew or nieces." After the death of W. T. M. intestate, A. L. G. died without bodily heirs having been born to her, and without having exercised the choice or power of appointment. She was survived by her husband. Held:
(a) A. L. G. took a base or qualified fee, subject to be divested upon her dying without bodily heirs.
(b) A. L. G. having died without bodily heirs subsequently to the death of W. T. M. intestate, and having failed to exercise the power of appointment, a reversion resulted, upon her death, to the heirs at law of the grantor.
(c) Where, under a deed, a base or qualified fee is conveyed subject to be divested upon the happening or nonhappening of an event, with power in the grantee to appoint the property to any member of a designated class in the event the qualified fee is divested, the nonexercise of such power by the grantee does not enlarge the qualified fee into an absolute fee.
(d) A. L. G. having died without leaving child or children, her husband would take the distributive share descending to A. L. G. as her sole heir at law, provided she had not alienated it before her death.
3. "The rights of a reversioner are the same as those of a vested remainderman" (Code, § 85-701), and such an estate devolves by operation of *Page 266 
law upon those who answer the description of heirs at law as of the time of the testator's or grantor's death, with possession postponed until the termination of the prior estate.
4. Where a joint action for land is brought by several persons, and the evidence shows that one of them is not entitled to recover, there can be no recovery at all. The rule in such case is the same whether the action be in the statutory or fictitious form. The instant suit being an action in ejectment, under the preceding rulings the verdict directed for the plaintiffs, who sued jointly as heirs at law of W. T. M., was erroneous in that there was no evidence to show that one of the plaintiffs was entitled to recover any interest in the land upon such theory.
5. The courts of this State are bound to take judicial notice of the boundaries and the relative location of its various counties as originally laid off; of the governmental survey of its territory, where the same, agreeably to lawful authority and direction, was divided into districts, each containing land lots of a given shape and size, designated by numbers; and also of the effect of all legislative enactments creating new counties and fixing the boundary lines thereof. With the aid of the foregoing principle, the description of the land sought to be recovered in the present case was sufficient to enable the sheriff to execute a writ of possession in the event of recovery by the plaintiffs.
 No. 14546. JUNE 14, 1943.
This is an action in ejectment in the fictitious form, predicated upon a demise from W. A. Morgan, Miss Louise Morgan, Miss Annie Morgan, Mrs. Henderson Burch, and Mrs. Riley Wooten, against J. F. Guess, the alleged tenant in possession, for recovery of a "three-fourths undivided interest in and to one-fourth of lot of land number 131, containing 62-1/2 acres, more or less, and being the northeast one-fourth of said lot and lying in the northeast corner of said lot, said lot situated in the 7th district of said Baker County, except three acres of land lying in the northwest corner of the one-fourth of lot of land number 131 in the 7th district of Baker County, Georgia." It was alleged that the defendant had received rents and profits arising from the use of the land, in the amount of $150 per annum from July 12, 1938, the date of the alleged ouster, to the loss and damage of plaintiffs. The defendant filed a general plea of not guilty. On the trial the plaintiffs introduced evidence disclosing that W. T. Morgan, under whom the plaintiffs claimed the property in question, died intestate about 1924, and there was no administration of his estate. He left surviving a widow and five children, W. A. Morgan, J. R. Morgan, Miss Louise Morgan, Mrs. *Page 267 
O. M. Sanders, and Mrs. Anna L. Guess. The widow died in 1925 or 1926 after the death of her husband, and J. R. Morgan shortly thereafter followed his mother in death, leaving surviving two daughters, Mrs. Henderson Burch and Mrs. Riley Wooten, who are named as parties plaintiff. Anna Lee Guess, the wife of the defendant, was in possession of the land at the time of the death of her father, and remained in possession until her death about eight years ago. She died without children having been born to her. W. T. Morgan owned all of lot number 131, but before his death he had given to each of his children a portion of his estate. Mrs. O. M. Sanders is not a party to the case.
The plaintiffs claimed the property as heirs at law of W. T. Morgan, their father. They introduced in evidence a warranty deed dated December 20, 1913, from W. T. Morgan to Anna Lee Guess, recorded November 5, 1928, the conveying clause of which was as follows: "Witnesseth that the said W. T. Morgan of the first part [for and in consideration of] Her part of the Estate — dollars, to Estate in Given to said Anna Lee Guess, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, given, and conveyed, and by these presents does grant, give, and convey unto the said Anna Lee Guess the second part, and to Anna Lee Guess Bodily heirs and assigns forever, all If no Bodily Heirs then to be left to her choice any member of Morgan family Brother or Sister Nephew or Nieces." Following this language was a description of the property as set forth above. The description in the deed referred also to a plat drawn in the form of a square in the body of the deed, on which was marked "Lot No. 131." In the northeast corner of this plat a parcel was marked off in the form of a square, with the words "Anna Lee Guess" written therein. Another small parcel was diagrammed in the northwest corner of the square just mentioned. No marks of direction are indicated on this plat, but the directions here used are based upon the assumption that the top of the plat as drawn points to the north. The habendum clause is unintelligible, but there was an attempt to warrant and defend the premises unto Anna Lee Guess and her heirs. There was evidence to the effect that $100 per annum was reasonable rental for the land, and that J. F. Guess was in possession. At the conclusion of plaintiff's evidence the defendant moved for a nonsuit, which the court declined to grant. The *Page 268 
defendant electing not to offer any evidence, upon motion of plaintiffs the court directed the jury to return a verdict in favor of the plaintiffs for the land sued for. The defendant moved for a new trial on the general grounds, later amending the motion by adding other grounds. The assignments of error as presented in the motion may be briefly stated as follows: (4) The court erred in refusing to grant a nonsuit, and in directing the verdict for the plaintiffs, for the following reasons: (a) The evidence failed to show that W. T. Morgan ever had title or possession of the land. (b) The evidence showed no title in plaintiffs. (c) The deed from W. T. Morgan to Anna Lee Guess, introduced by the plaintiffs, failed to show any title in plaintiffs; and if it be conceded that W. T. Morgan owned the land at the time of the execution of the deed, the attempted limitation over in the deed is void for uncertainty, and the attempt to create an estate tail in the first part of the deed had the effect of vesting the fee-simple title in Anna Lee Guess, who was not required to exercise the power of appointment; and no penalty being provided in the event she failed to exercise it, the fee-simple title vested in her at her death, and her husband, the defendant, took the property as her sole heir at law; and further, no provision was made for a reversion to the estate of the grantor. (d) The evidence failed to show any title or claim of ownership in Miss Annie Morgan, one of the named plaintiffs, and therefore the verdict was without evidence to support it. (e) The three-fourths undivided interest in the land recovered by plaintiffs was a greater quantum than was justified by the evidence. (5) The description of the property is too vague and indefinite to support the verdict. A new trial denied, and defendant excepted.
1. The assignment of error in ground 4 of the motion for new trial, upon the refusal to grant a nonsuit on motion, will not be considered, since the motion for new trial presents the complaint that the verdict is without evidence to support it, and in a consideration of this latter ground the question of sufficiency of evidence can be adequately tested, if necessary to pass upon it. "An exception to the refusal to award a nonsuit will not be considered where the jury has rendered a verdict against the defendant, and exception is taken to the refusal to grant a new trial on the ground that the verdict was not supported by evidence." *Page 269 Henderson v. Maysville Guano Co., 15 Ga. App. 69
(82 S.E. 588); Atlantic Coast Line R. Co. v. Blalock, 8 Ga. App. 44
(68 S.E. 743); Don v. Don, 163 Ga. 31 (3) (135 S.E. 409);Guffin v. Kelly, 191 Ga. 880 (14 S.E.2d 50), and cit.
2. The assignments of error in the amendment to the motion for new trial require a construction of the deed introduced in evidence and relied on by the plaintiffs as forming the basis of their claim. In construing deeds the court must look to the whole instrument to ascertain the intention of the parties. Code, § 29-109. "In the construction of deeds, as well as other contracts, the paramount, essential, and controlling rule is to ascertain the intention of the parties. If that intention is plain from the language of the deed as a whole, and the intention contravenes no rule of law, it should be given effect regardless of mere literal repugnancies in different clauses of the conveyance." Keith v. Chastain, 157 Ga. 1 (121 S.E. 233);Simpson v. Brown, 162 Ga. 529 (134 S.E. 161, 47 A.L.R. 865); Huie v. McDaniel, 105 Ga. 319 (31 S.E. 189);Aycock v. Williams, 185 Ga. 585 (196 S.E. 54). The first question to be decided is whether Anna Lee Guess took a fee-simple estate in the land. The language of the deed is peculiar, and its phraseology is probably unlike any former pattern. The contention is made that by the use of the words "bodily heirs" immediately after the name of the grantee "Anna Lee Guess" there was an attempt to create an estate tail, which under the law is not permitted and would result in vesting a fee-simple estate in Mrs. Guess. Had there not been the further provision in the deed conferring on the grantee a power to appoint the property to a person of her choice from a named class in the event of failure of bodily heirs, the deed would have been susceptible of such construction. "A grant to A and the heirs of his body, or his heirs by a particular person, or his issue, and similar expressions, conveys the absolute fee to A." Palmer v.Atwood, 188 Ga. 99 (3 S.E. 63). Code, § 85-505; Craig v.Ambrose, 80 Ga. 134 (4 S.E. 1); Griffin v. Stewart,101 Ga. 720 (29 S.E. 29); McCraw v. Webb, 134 Ga. 579 (2) (68 S.E. 324); Stamey v. McGinnis, 145 Ga. 226
(88 S.E. 935). While the habendum clause in the deed would seem to indicate an intention to pass a fee-simple title, when considered with all provisions of the deed, there is no real ambiguity. All the provisions of the deed should be given effect and made to harmonize where possible; *Page 270 
but if there should be any repugnancy between the conveying clause and the habendum clause here, the conveying clause will prevail. Ward v. Ward, 176 Ga. 849 (169 S.E. 120). To give to the deed the construction sought by the defendant would be to render meaningless the last sentence of the conveying clause providing for the contingency that would arise in the event of failure of bodily heirs out of the grantee. A construction of the clause, "if no bodily heirs, then to be left to her choice any member of Morgan family brother or sister nephew or nieces," is practically self-imposed. It can mean naught else but that if Anna Lee Guess should die without bodily heirs, she was empowered to dispose of the estate over, which resulted upon the failure of bodily heirs, to any member of her choice from the class named. No children having been born to Anna Lee Guess, she having failed to exercise the power of appointment upon failure of issue, and the grantor not having directed any other disposition of the fee which had been determined, a reversion resulted upon the date of the death of Anna Lee Guess, that being the earliest possible time the failure of issue could be determined. "An estate in reversion is the residue of an estate, usually the fee left in the grantor and his heirs after the determination of a particular estate which he has granted out of it. The rights of the reversioner are the same as those of a vested remainderman in fee." Code, § 85-701. In virtue of the impressions here stated, Anna Lee Guess took a qualified fee, defeasible upon her death without having or leaving bodily heirs. "An absolute estate may be created to commence in future, and the fee may be in abeyance without detriment to the rights of subsequent remainders. A fee may be limited upon a fee, either by deed or will, where the plain intention of the grantor or testator requires it, and no other rule of law is violated thereby." Code, § 85-502.Matthews v. Hudson, 81 Ga. 120 (7 S.E. 286, 12 Am. St. R. 305); Greer v. Pate, 85 Ga. 552 (11 S.E. 869); Davis v.Hollingsworth, 113 Ga. 210 (38 S.E. 827, 84 Am. St. R. 233);Kinard v. Hale, 128 Ga. 485 (57 S.E. 761); Reynolds v.Dolvin, 154 Ga. 496 (114 S.E. 879); Hill v. Terrell,123 Ga. 49 (51 S.E. 81); Slappey v. Vining, 150 Ga. 792
(105 S.E. 353); Curles v. Wade, 151 Ga. 142 (106 S.E. 1);McCoy v. Olive, 168 Ga. 492 (148 S.E. 327), and cit. See 4 Kent's Com. 9; 19 Am. Jur. § 33. "No remainder can be created to follow a determinable fee, but such determinable fee is occasionally followed *Page 271 
by an executory limitation shifting the estate to a person other than the immediate devisee or grantee upon the happening of the event terminating the defeasible estate. The determinable estate expires and is followed by the estate over." 19 Am. Jur. § 28. The fee created in the deed under consideration determined, or the purity of the title was debased, upon the death of the grantee without having or leaving bodily heirs. Although there was no remainder, the grantor had provided a means, through the power of appointment in the donee, whereby the estate could be shifted to another person. Bodily heirs having failed, the donee not having exercised the power, and the grantor not having provided a final resting place for the fee in these contingencies, it had to go where the law guided it; and the authorities in such circumstances are in conflict. Many courts incline to the view that where a donor has created a power of appointment in a donee and designated a class from which the donee may select an appointee, the power is one of trust which equity will exercise, in the event of the donee's failure to do so, by apportioning the property equally among all members of the class or classes. Henderson v. Western Carolina Power Co.,200 N.C. 443 (157 S.E. 425, 80 A.L.R. 497). See 80 A.L.R. 503, note; 41 Am. Jur. § 92. However, this court seems to be committed to a different rule, and inclined to the view that in such cases the property reverts to the donor to go to such persons as directed in his will in case of such contingency, or, upon failure of such direction, to his heirs at law. Haralson v.Redd, 15 Ga. 148; Wilder v. Holland, 102 Ga. 44
(29 S.E. 134); Richardson v. Burns, 142 Ga. 779 (83 S.E. 788);House v. Carlton, 148 Ga. 472 (97 S.E. 80). See 3 Page on Wills, 914, § 1333. Although the English cases are not in harmony on the question, the following may be cited as authority for the ruling here made. Duke of Marlborough v. Lord Godolphin, 2 Ves. Sr. 61; In Re Weeks Settlement [1897], 1 Ch. 289. The present case is one at law, but the cases of this court cited above involved principally the construction of wills.
The determinable fee of Anna Lee Guess was not enlarged to an absolute fee by reason of the power of appointment conferred upon her, or by her failure to exercise it. Edmondson v. Dyson,2 Ga. 307; Porter v. Thomas, 23 Ga. 467; Wetter v.Walker, 62 Ga. 142; Baynes v. Aiken, 166 Ga. 898
(144 S.E. 736). The decisions last mentioned hold that a life-estate accompanied by power of appointment *Page 272 
and unexercised by the donee will not enlarge the life-estate into a fee. In the present case a life-estate in legal terminology was not conveyed, but the qualified fee resting in the donee was defeated upon the death of the donee leaving no bodily heirs. By the same process of reasoning, it can not be held that the power operated to enlarge the estate conveyed. As a matter of fact the fee was incapable of enlargement. It was a fee-simple estate determinable upon the failure of issue. How then could the super-added power of appointment, though unexercised, be substituted as a means of making a determinable fee absolute in lieu of the birth of bodily heirs, which under the deed would have made the fee absolute? We do not think it had such effect.
3. We now come to a consideration of the question of time of ascertainment of the heirs of W. T. Morgan, the donor, who should take the reversionary estate. W. T. Morgan died intestate, and therefore no disposition was made of the reversion, it not appearing that he had otherwise alienated it. "The rights of a reversioner are the same as those of a vested remainderman in fee." Code, § 85-701. Under the rule of force in this State such interest devolves by operation of law upon those who answer the description of such heirs or next of kin as of the time of the testator's or grantor's death, with possession postponed until the death of the life-tenant, or in this case until the happening or nonhappening of the event that defeats the absolute fee.Thompson v. Sanford, 13 Ga. 238; Wilder v. Holland, supra; Oliver v. Powell, 114 Ga. 592, 600 (40 S.E. 826);Armstrong Junior College Com. v. Livesey, 189 Ga. 825 (4) (7 S.E.2d 678, 132 A.L.R. 1063); Shockley v. Storey,185 Ga. 790 (196 S.E. 702). Under this ruling, Anna Lee Guess having died without leaving children, her husband, the defendant, would be her sole heir at law and entitled to the distributive share descending to his wife, provided she had not disposed of it. Compare Richardson v. Burns, supra.
4. "Where a joint action for land is brought by several persons, and the evidence shows that one of them is not entitled to recover, there can be no recovery at all. The rule in such case is the same whether the action be in the statutory or fictitious form." Burton v. Patton, 162 Ga. 610
(134 S.E. 603); Walker v. Pope, 101 Ga. 665 (29 S.E. 8); McGlamory
v. McCormick, 99 Ga. 148 (24 S.E. 941); Hunt v.Lavender, 140 Ga. 157 (3) (78 S.E. 805); Powell *Page 273 
v. Porter, 189 Ga. 440 (5 S.E.2d 884). The record being entirely barren of evidence showing any title in Miss Annie Morgan, one of the parties plaintiff to the case, the verdict in favor of the plaintiffs was unauthorized, and on this ground it was error to deny
5. "A declaration in ejectment should describe the premises in dispute with such definiteness that, in the event of a recovery by the plaintiff, the sheriff could execute the writ of possession from the description given." Darley v. Starr,150 Ga. 88 (2), 90 (102 S.E. 819); Powell on Actions for Land, § 25; Harwell v. Foster, 97 Ga. 265 (22 S.E. 994); Clark
v. Knowles, 129 Ga. 291 (58 S.E. 841); Hollywood CemeteryCorporation v. Hudson, 133 Ga. 271 (65 S.E. 777). InDarley v. Starr, supra, the court said: "This court will take judicial cognizance of the boundary lines of the counties originally laid off in accordance with the governmental survey which divided the counties into districts designated by numbers, and subdivided the territory embraced in these counties into original land lots duly numbered. The original plat showing the boundary lines and relative locations of the districts and land lots in each county are of file in the office of the Secretary of State." Citing Stanford v. Bailey, 122 Ga. 404
(50 S.E. 161); Huxford v. Southern Pine Co., 124 Ga. 181 (3), 182 (52 S.E. 439); McCaskill v. Stearns, 138 Ga. 123
(74 S.E. 1032). This court will take judicial cognizance of the fact that land lot 131 in the 7th district of Baker County is in the form of a square, and contains 250 acres. By an act of the General Assembly, assented to December 12, 1825 (Ga. L. 1825, p. 61), Baker County was created and laid out from territory that comprised a part of Early County. By an act of the General Assembly, assented to December 15, 1818 (Ga. L. 1818, p. 27, Lamar's Dig., 416), Early County, along with the counties of Irwin and Appling, was formed out of the lands acquired by the United States from the Creek and Cherokee nations of Indians. It was provided in the act that all the territory lying west of a line commencing on the Creek temporary line and two and three-fourths miles on the east side of Flint River and running south to the southern boundary of this State shall form the County of Early. The act further provided: "The County of Early shall be laid off into districts of twelve miles and forty chains square, as near as convenience will admit, by running lines parallel with the dividing *Page 274 
line between said county and the County of Irwin and others crossing them at right angles and numbered from one to twenty-three. The districts shall be divided into squares of fifty chains, containing two hundred and fifty acres, by lines parallel with the district lines, and others crossing them at right angles, and the parts of tracts bound on Flint River, and on all other watercourses within the territory, to be disposed of by this act, containing one hundred and sixty acres and under, shall be considered as fractions, and be disposed of accordingly." By reference to the original plats in the office of the Secretary of State, land lot number 131 of the 7th district of Baker, originally Early, County is found to be square and to contain the specified two hundred and fifty acres, and is not one of the fractional lots referred to in the act. Therefore the description of the land sought to be recovered, as set out in the declaration as being a three-fourths undivided interest in one-fourth of land lot number 131 of the 7th district of Baker County, Georgia, containing 62-1/2 acres, more or less, and being the "northeast one-fourth of said lot and lying in the northeast corner of said lot, except three acres of land lying in the northwest corner of the one-fourth of lot of land number 131," was sufficient, and was not lacking in definiteness to the extent that the sheriff could not execute a writ of possession from the description given. In Payton v. McPhaul, 128 Ga. 510
(58 S.E. 50, 11 Ann. Cas. 163), it was held: "The corner of the lot is to be taken as a base point from which two sides of the tract of land conveyed shall extend an equal distance, so as to enclose by parallel lines the quantity conveyed." Where the base line of the survey is a line running north and south or east and west, which is true with reference to the lot under consideration, the above ruling will apply. Osteen v. Wynn, 131 Ga. 209
(62 S.E. 37, 127 Am. St. R. 212); Darley v. Starr, supra. By the same process the three-acre tract, which was excepted from the description, may be eliminated. There was no error in refusing to grant a new trial on this assignment.
Since the judgment is reversed, and upon a subsequent trial the evidence is not likely to be the same, the general grounds are not passed upon.
Judgment reversed. All the Justices concur. *Page 275