S02A0410. ALLGOOD FARM, LLC v. JOHNSON et al.

(565 SE2d 471)

HINES, Justice.

This is an appeal by defendant Allgood Farm, LLC ("Allgood Farm") from the grant of summary judgment to plaintiffs Dennis

Johnson, Grace Johnson, Tracy Johnson, and The New England Improvement Company in their petition for ejectment based on their claims of the mineral rights in land in Chattooga County owned by Allgood Farm. For the reasons which follow, we affirm.

The mineral rights at issue involve three and a half land lots, Nos. 129, 164, 165, and the western half of 128, in the 13th District and the 4th Section of Chattooga County. Plaintiffs petitioned for ejectment and asked for the issuance of a writ of possession, claiming all mineral interests[1] in the specified land lots through a chain of title dating back to 1887, and that Allgood Farm had unlawfully excluded plaintiffs from gaining access to the land in order to exercise those mineral rights. Plaintiffs moved for summary judgment submitting in support an "abstract of title," copies of deeds, their affidavits individually and as representatives of The New England Improvement Company, a typewritten transcript of one conveyance, tax records, and Allgood Farm's deeds. Allgood Farm responded that the "oil rights complained about by [p]laintiffs" clearly were not conveyed to plaintiffs in their alleged chain of title, and that at a minimum, a disputed issue of material fact existed as to who owned the oil rights, or any mineral rights in the land lots at issue; Allgood Farm submitted copies of a 1998 limited warranty deed conveying to it real property in Land Lots 128, 164, and 165[2] and of a 1999 warranty deed conveying to it the remaining land lot, 129. The superior court found no genuine issue of material fact with regard to plaintiffs' ownership of the mineral rights in the land lots and granted summary judgment to the plaintiffs.

1. Allgood Farm contends that summary judgment was improperly granted because plaintiffs' alleged chain of title to the mineral rights is broken at several links. It is true that "[a] plaintiff in ejectment must recover on the strength of his own title and not on the weakness of the defendant's title." OCGA § 44-11-1. But contrary to Allgood Farm's contention, the plaintiffs' submitted evidence of title is not fatally flawed.

The chain cited by Allgood Farm is the following: (1) Lewis Holdbrooks conveyed title to "all the minerals of every kind and Petroleum" in the north side of Land Lot 165 to D. F. Allgood on December

---

[1] For purposes of this opinion, the terms "mineral interests" and "mineral rights" are used interchangeably.

[2] This limited warranty deed purports to convey to Allgood Farm "all that certain tract or parcel of real property lying and being in Land Lots 128, 160, 161, 164 and 165, 13th District, *2nd Section*, Chattooga County, Georgia." (Emphasis supplied.) However, there is no dispute that the land lots at issue are in the 13th District, *4th Section* of Chattooga County. Also, the conveyance in the limited warranty deed was expressly subject to, inter alia, "[m]atters appearing of record in the real estate records of [Chattooga] County, Georgia."

22, 1887;[3] (2) David Boiles conveyed title to "all . . . petroleum and other minerals" in the south side of Land Lot 165 to D. F. Allgood on January 28, 1887; (3) Cicero McConnell conveyed title to "all the coal, iron ore and the ores of any and all other metals and all clays and building stone and all the minerals of every kind" in Land Lot 128 to D. F. Allgood on December 22, 1887; (4) W. P. Bailey conveyed title to "all the coal, iron ore, and the ores of any and all other metals, and all clays and building stone, and all the minerals of every kind" in Land Lot 129 to D. F. Allgood on December 23, 1887;[4] (5) D. F. Allgood conveyed title to "all the coal, iron ore, and the ores of any and all other metals and all the clay and building stone" and "to hold the aforesaid mineral interests" in Land Lots 164, 165, 129, and the western half of 128 to J. D. Williamson on November 9, 1887; (6) Linda M. Richards and Mary V. Melton, in their capacities as the heirs of J. D. Williamson, conveyed title to "all mineral interests of every kind and character, including ores, clays, building stone, petroleum and hydrocarbons, with full mining rights and privileges thereto" in Land Lots 128, 129, 164, and 165 to Dennis Johnson and Marie Smith on November 7, 1981; (7) Dennis Johnson and Marie Smith conveyed "[a]ll of the oil and gas in liquid, gaseous and vaporous forms or state, which can be produced through the bore of a well" in Land Lots 164, 165, and the western half of 128 to the New England Improvement Company on November 10, 1981, "[t]ogether with the right and privilege of entering upon said lands and mining, taking and transporting therefrom said oils and gases, and also, the right of ingress and egress to and from all parts of said lands for the purpose of raising, mining, collecting, moving, and transporting therefrom said oils and gases produced from said lands" and (8) Marie Smith conveyed "[a]ll of the mineral interests of every kind and character, including ores, clays, building stone, petroleum and hydrocarbons, with full mining rights and privileges thereto" in Land Lots 164, 165, 129, and 128 to Grace K. Johnson and Tracy D. Johnson on August 18, 1987.

(a) First, Allgood Farm maintains that with regard to link five, there is a genuine issue of material fact about the scope of the mineral interests conveyed by D. F. Allgood to J. D. Williamson, and that oil and gas rights were not granted to J. D. Williamson.[5] But gener-

---

[3] This deed also bears the date January 28, 1887.

[4] The deeds in links three and four also reflect the date January 27, 1887.

[5] Allgood Farm states that although it does not concede that there are no disputed material facts with respect to links one through four, it "cannot address the factual flaws in these links at this time" because the deeds of record regarding those links are "illegible" and it "did not have the benefit of discovery" before responding to plaintiffs' motion for summary judgment. However, the deeds of record, while difficult to read, are not illegible. Also, there is no requirement that a motion for summary judgment be filed after the close of discovery. A

ally, the interpretation of language in a deed is a question of law for the court unless the language is so ambiguous that the ambiguity cannot be resolved by use of the ordinary rules of construction. *Giddens v. Barrentine*, 264 Ga. 510, 511 (1) (448 SE2d 441) (1994); *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce*, 238 Ga. 551, 553 (2) (233 SE2d 753) (1977). Here, the court resolved the language at issue in favor of finding all mineral interests to be held by the plaintiffs.

"The cardinal rule of construction is to ascertain the intention of the parties." *Giddens v. Barrentine*, supra at 511 (1). Moreover, "[t]he intention of the parties as reflected by the instrument as a whole determines the nature of the interest conveyed." *Milner v. Bivens*, 255 Ga. 49, 51 (4) (335 SE2d 288) (1985). Following the language conveying "all the coal, iron ore and the ores of any and all other metals and all the clay and building stone" the instrument states that Williamson is "to hold the aforesaid mineral interests" and that "D. F. Allgood makes this conveyance for the sole purpose of placing in the said Williamson all the rights interests and titles the said Allgood may have acquired" under other deeds conveying interests in the land. This Court has long recognized that oil and gas are mineral interests. See *Meeks v. Adams Louisiana Company,* 193 Ga. 680 (19 SE2d 526) (1942). Thus, considering all of the language contained in the 1887 deed from D. F. Allgood to J. D. Williamson, the court was justified in finding that the intent of the parties was to convey all mineral interests held by Allgood to Williamson.

(b) Next, Allgood Farm challenges links six and seven, claiming that there is insufficient evidence to establish that J. D. Williamson did not leave a will, or that his wife or child did not leave wills, and that consequently there is a genuine issue of disputed fact regarding whether Linda M. Richards and Mary V. Melton, simply by virtue of being the grandchildren of J. D. Williamson, received the rights to minerals on the lands at issue. But that is not the case.

The record contains the affidavit of Linda M. Richards and Mary V. Melton averring that they are the surviving heirs of J. D. Williamson and that to their knowledge, neither their grandparents nor parents left any wills when they died.[6] Thus, the plaintiffs' evidence was that Richards and Melton were the heirs at law of the mineral interests of J. D. Williamson, and thus able to convey mineral interests to Dennis Johnson and Marie Smith, which Johnson and Smith subse-

---

party may move for summary judgment "at any time after the expiration of 30 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." OCGA § 9-11-56 (a).

[6] Contrary to Allgood Farm's assertion, the affidavit is not "vague and indefinite," and therefore, insufficient as evidence of title.

quently conveyed. And Allgood Farm failed to present any evidence to dispute this.

(c) Allgood Farm also asserts that plaintiffs' "allegations as to Link Eight are unclear and vague" because, as previously argued, Marie Smith could not convey that which she did not have; Smith conveyed to Grace and Tracy Johnson the exact mineral interests which she had already conveyed to The New England Improvement Company, i.e., "oil and gas"; and plaintiffs' affidavits (the Johnson affidavits) regarding Smith's conveyance of interests are vague and unclear. First, as already discussed, the undisputed evidence was that Smith acquired her mineral interests from the intestate heirs of J. D. Williamson. See Division 1 (b), supra. Secondly, there is no apparent conflict between the corporate plaintiff and the individual plaintiffs regarding any overlapping mineral rights, especially in light of the fact of the unity of interest of all the plaintiffs. See Division 3, infra. Finally, any asserted lack of clarity in the Johnson affidavits is of no moment. The deeds speak for themselves.

2. Allgood Farm contends that even if plaintiffs can establish title to the mineral rights, genuine issues of material fact exist regarding whether it has superior title to the mineral rights by virtue of its ownership and possession of the land lots in question. However, the undisputed evidence is that plaintiffs' mineral interests predate any ownership by Allgood Farm by nearly 100 years. What is more, the 1998 limited warranty deed evidencing Allgood Farm's initial ownership in all but one of the land lots at issue states that the conveyance was made subject to "[m]atters appearing of record in the real estate records of [Chattooga] County, Georgia." See footnote 2, supra. And the record contains the affidavit of the Clerk of the Superior Court of Chattooga County which states that the deeds referred to in plaintiffs' motion for summary judgment are accurate copies of those filed in the Chattooga County Deed Room.

3. Allgood Farm also contends that a genuine issue of material fact exists regarding whether plaintiffs' mineral rights have lapsed pursuant to OCGA § 44-5-168[7] because there is no evidence to support that plaintiffs either attempted to work the mineral rights in the land from 1981 until 1999 or that the individual plaintiffs paid taxes

---

[7] OCGA § 44-5-168 provides in relevant part:

(a) Whenever mineral rights are conveyed or whenever real property is conveyed in fee simple but the mineral rights to such property are reserved by the grantor, the owner of the real property in fee simple or his heirs or assigns may gain title to such mineral rights by adverse possession if the owner of the mineral rights or his heirs or assigns have neither worked nor attempted to work the mineral rights nor paid any taxes due on them for a period of seven years since the date of the conveyance and for seven years immediately preceding the filing of the petition provided for in subsection (b) of this Code section.

on the mineral rights. Citing *Guess v. Morgan*, 196 Ga. 265, 272 (4) (26 SE2d 424) (1943), in which this Court held that when several persons bring a joint action for land, and the evidence is that one of them is not entitled to recover, there can be no recovery at all, Allgood Farm urges that any payment of taxes for the mineral rights by the corporate plaintiff should not inure to the benefit of the individual plaintiffs. But the evidence on summary judgment compels a contrary conclusion.

Under OCGA § 44-5-168, an owner of the mineral rights loses them by nonuse plus the nonpayment of taxes because the purpose of the statute is "to encourage the use of the state's mineral resources and the collection of taxes, or to encourage the use of land free of interference by the holders of mineral rights who neither use nor pay taxes upon them." *Fisch v. Randall Mill Corp.*, 262 Ga. 861 (1) (426 SE2d 883) (1993), quoting *Hayes v. Howell*, 251 Ga. 580, 585 (308 SE2d 170) (1983).

Plaintiffs offered the uncontradicted affidavit of Dennis Johnson which stated in relevant part that he and Marie Smith purchased all mineral interests in the land in Chattooga County from Linda M. Richards and Mary V. Melton on November 7, 1981; that he and Marie Smith paid all back taxes from 1975 until 1981 when some interests were conveyed to The New England Improvement Company; that The New England Improvement Company has paid the property taxes from 1981 forward; that at the time of a conveyance to The New England Improvement Company on November 10, 1981, he and Marie Smith were the major stockholders in the company, each owning 46 percent of it; and that on August 18, 1987, Marie Smith sold her 46 percent interest to Grace Johnson and Tracy Johnson, making himself along with Grace Johnson and Tracy Johnson the major stockholders in The New England Improvement Company.

Other uncontroverted evidence showed that the Johnsons are family members; that The New England Improvement Company was a lessor of minerals; that its tax bills were mailed in care of Dennis Johnson, and that recent taxes (1999) for the mineral rights were paid for The New England Improvement Company by check on the joint account of "Dennis, Grace or Tracy Johnson." Thus, the undisputed evidence is that, for the purpose of payment of taxes on the held mineral rights, there is such an identity of ownership and interest among the individual plaintiffs and the corporation that it is impossible to distinguish among the plaintiffs in the allocation of the tax liability or its payment. Therefore, it can hardly be said that any of the plaintiffs' mineral rights have lapsed pursuant to OCGA § 44-5-168, and therefore, that any of the plaintiffs are precluded from recovery under the petition for ejectment. Compare *Guess v. Morgan*, supra in which there was no evidence of title in one of the plaintiffs.

4. Allgood Farm next contends that the trial court based its decision on inadmissible evidence in that plaintiffs failed to attach the "abstract of title," see OCGA § 44-11-12,[8] in legible form, that copies of the deeds attached to plaintiffs' petition were not certified at the time the motion for summary judgment was filed, and that certain other documents, including "non-specific" tax information, were not certified. But the record contains a very legible typewritten "abstract of title," and prior to the entry of summary judgment, the plaintiffs submitted certified copies of the deeds establishing their chain of title. Even accepting arguendo the remaining complaints, they make no difference because the admissible and undisputed evidence of record, including plaintiffs' affidavits, established plaintiffs' unlapsed mineral interests.

5. Lastly, Allgood Farm contends that the trial court erred in failing to distinguish among the various mineral rights at issue or the rights of each plaintiff. Again, plaintiffs petitioned for a finding that they held all mineral rights in the land lots and the trial court granted summary judgment on the question. See Division 1 (a), supra. As to any distinction among the mineral interests held by each plaintiff, that was not at issue. There is no evidence that the trial court was ever requested to make such a determination by any of the parties, including Allgood Farm.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., and Hunstein and Carley, JJ., who dissent.*

FLETCHER, Chief Justice, dissenting.

Because there remains a disputed issue of material fact concerning whether the mineral interests of the Johnsons and The New England Improvement Company have lapsed due to their failure to pay taxes on their property interest, they are not entitled to summary judgment. Therefore, this Court should reverse the trial court's grant of summary judgment to them.

OCGA § 44-5-168 provides for the lapse of mineral interests to the surface owner of the property when the mineral owner fails to use its rights or pay taxes on its interest for seven years. Subsection (a) provides that when mineral rights are conveyed the fee owner "may gain title to such mineral rights by adverse possession if the owner of the mineral rights or his heirs or assigns have neither worked nor attempted to work the mineral rights nor paid any taxes due on them for a period of seven years since the date of the conveyance." To preserve its property interest by making tax payments, the mineral owner must show that (1) it paid ad valorem taxes on the

---

[8] OCGA § 44-11-12 provides: "The plaintiff shall attach an abstract of the title relied on for recovery to the petition for the recovery of land and mesne profits."

mineral rights,[9] (2) it paid the taxes as the holder of the mineral rights rather than as the landowner,[10] and (3) the taxes were paid for its mineral interest in a specific, identifiable parcel of land.[11] The mineral owner may establish the identity of the underlying property by filing a return on its mineral interest or having local tax officials value the property and assess taxes on it.[12]

On motion for summary judgment, the owner of the mineral rights has the burden of proving that there is no genuine issue of material fact concerning the payment of taxes.[13] Neither of the mineral owners' two references in the record to their payment of taxes establishes that they are entitled to judgment as a matter of law. They first rely on an exhibit labeled "Property Tax Information" that is attached to their summary judgment brief, but none of the documents, which concern payment of a 1999 tax bill, is certified or authenticated in some other way. Without a proper foundation, neither the trial court nor this Court can rely on the exhibit as admissible evidence that conclusively establishes the payment of taxes.[14] In addition, the mineral owners point to the affidavit of Dennis Johnson, a stockholder in The New England Improvement Company, and ask this Court to infer that taxes were paid on the land based on his affidavit. In it, Johnson states that he and Marie Smith "paid all back taxes from 1975 to 1981" and "The New England Improvement Company has paid the property taxes since 1981." The affidavit does not state that they paid property taxes on their mineral interests, identify a specific piece of property for which they paid taxes, or indicate how Johnson knew that the company had paid the taxes since 1981. Moreover, there is no evidence that the mineral owners filed a return on their property or that Chattooga County tax

---

[9] See *Dubbers-Albrecht v. Nathan*, 257 Ga. 111, 112-113 (356 SE2d 205) (1987) (mineral owner's payment of state or federal estate taxes does not defeat fee owner's claim under OCGA § 44-5-168).

[10] See *Hayes v. Howell*, 251 Ga. 580, 586 (308 SE2d 170) (1983) (owner of one-half interest in minerals is not entitled to claim the benefit of tax payments by landowner who owns the remaining mineral interest in land).

[11] See *J.F. Nelson, Jr. Family Limited Partnership v. Miller*, 267 Ga. 466, 467-468 (479 SE2d 737) (1997) (mineral owner lost his title to mineral rights in 269.5 acre tract owned by Nelson when county tax records showed Miller paid taxes on mineral interest assessed on his homeplace rather than the Nelson tract); *Georgia Marble Co. v. Whitlock*, 260 Ga. 350, 353-354 (392 SE2d 881) (1990) (mineral owner's lump-sum payment for mineral interests on unspecified property in county did not constitute payment of taxes on the specific parcel of land involved in the lawsuit).

[12] See *Georgia Marble*, 260 Ga. at 354.

[13] *Dubbers-Albrecht*, 257 Ga. at 112.

[14] See *Durben v. American Materials*, 232 Ga. App. 750, 751-752 (503 SE2d 618) (1998) (trial court did not have authority to consider uncertified pleadings from another case attached as an exhibit to a summary judgment brief without any attempt to authenticate them or offer them into evidence).

officials valued their property and assessed taxes on it. Based on this record, an issue of fact remains concerning whether the Johnsons and The New England Improvement Company paid ad valorem taxes on their mineral interest in the land that Allgood Farm owns in Chattooga County. Because the majority relies on inadmissible and ambiguous evidence that lacks the specificity required under our case law, I dissent.[15]

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED JUNE 25, 2002.

*Cook & Connelly, Bobby Lee Cook, McKenna, Long & Aldridge, Phillip A. Bradley, Sheryl L. McCalla*, for appellant.
*Albert C. Palmour, Jr., Johnny R. Dennis*, for appellees.

---

[15] Considering the limited record developed in the trial court, I cannot determine whether ejectment is an appropriate remedy. If the remedy is available, it can only eject Allgood Farm from possession of the minerals and does not otherwise affect Allgood's right to possess the surface. I note further that no determination of the extent of appellees' mining rights and privileges has been made in this ejectment action.